Abdullah Ahmad **BEY** et al.

v.

Francis H. **MULDOON** et al.

Civ. A. No. 30789.

United States District Court
E. D. Pennsylvania.

June 26, 1962.

See also 217 F.Supp. 404.

Dorfman, Pechner, Sacks & Dorfman, by Bernard Sacks, Philadelphia, Pa., for Benjamin Hicks, Harry Pintozzi, and others, plaintiffs.

Kelly, Deasey & Scanlan, William R. Deasey, Philadelphia, Pa., for defendants Francis H. Muldoon, Alfred Corry, Stuart J. Sobelman, Trustees, Robert G. Kelly and Philadelphia Marine Trade Assn.

Wolf, Block, Schorr & Solis-Cohen, Michael L. Temin, Philadelphia, Pa., for defendant, Broad Street Trust Co.

Freedman, Landy & Lorry, Abraham E. Freedman, Marvin I. Barish, Philadelphia, Pa., for defendants International Longshoremen's Assn., Local Union No. 1291, Richard L. Askew and Abraham E. Freedman.

JOSEPH S. LORD, III, District Judge.

This is an action by union members under § 302 of the Labor Management Relations Act, 29 U.S.C.A. § 186, against their union, ILA Local 1291, its president, Philadelphia Marine Trade Association (PMTA), which is an employer association, 3 individuals titled in this action as "trustees", the attorney for the union, and the attorney for the employer association titled as "escrow agents and custodians", and a bank as "depository of a special fund". The case is before us on motion of 3 of the defendants, the union, its president and its attorney, to dismiss under F.R.Civ.P. 12(b).

The complaint alleges that pursuant to a collective bargaining agreement, and a supplemental agreement dated February 26, 1960, entered into by the ILA and PMTA, it was agreed that certain employers would pay into a fund twenty-eight cents for each 2249 lbs. of bulk sugar discharged. It was contemplated that the fund would be used as a means "of compensating longshoremen who may lose job opportunities as a result of technological advancements * * *" One

employer has paid over moneys which were deposited in a bank account known as the "PMTA-ILA Local #1291 Royalty Fund". The deposit was accompanied by a letter signed by the attorneys for the PMTA and for the ILA in which the bank was "instructed that pending the submission of a trust agreement, there are to be no withdrawals from the Fund." Plaintiffs further allege that although the fund was created for their benefit, the ILA has refused to name trustees to administer and distribute the fund, and, on the contrary, has demanded that the moneys be turned over to it for its exclusive use. The prayer for relief, basically, requests the court to declare the rights in the fund of each plaintiff and of others similarly situated, and to direct that the fund be distributed to plaintiffs or direct that a trust agreement in conformity with § 302(c) be entered into which shall provide for distribution to the plaintiffs. Injunctive relief is also requested against any disposition of the fund until final determination of the case.

The major ground relied upon by the defendants for dismissal of this action is that the court has no general equitable jurisdiction under § 302 to construe the agreement and grant plaintiffs the vested rights which they claim.

 The philosophy underlying § 302 is prohibitory, rather than permissive. The Act permits only the exception; it does not permit the general and prohibit the exception. Thus, any payment by an employer to a union or to a fund over which a union does or may exercise control is in the first instance prohibited by § 302(a) and (b). Following the sweeping prohibitions of § 302(a) and (b), Congress proceeded in § 302(c) to carve out five specific exceptions where employer payments are permitted. The fifth of these exceptions, with which we are here concerned, relates to welfare funds and not only defines the use to which the employer payment may be put, but also establishes definite criteria for the manner in which it must be held

and administered. The fund must be held in trust [§ 302(c) (5) (A)]. There must be a written agreement with the employer setting forth the detailed basis on which payments to employes are to be made [§ 302(c) (5) (B)]. In the latter subsection, Congress even defined certain mandatory provisions of any such agreement. Unless the payment by the employer falls in all respects within the provisions of § 302(c), both as to the substantive purpose and the procedural administration and written formalization, it violates § 302(a) and (b).

 There can be no doubt that the payment here made does not meet the requirements of § 302(c) (5). It was not paid to a trust fund. It is not, as of now, held in trust for the purpose of being paid out for one of the permitted objects. There is no written agreement setting forth the detailed basis on which payments are to be made. There is no agreement providing for joint administration, with provision for resolving a deadlock, as demanded by § 302(c) (5) (B). There is no provision for an annual audit: § 302(c) (5) (B). In short, the demands of Congress, if a prohibited payment is to be transformed into a permitted one, have simply not been met.

In Mechanical Contractors Association of Philadelphia, Inc. v. Local Union 420, 265 F.2d 607 at page 611 (C.A.3, 1959), the court said:

" * * * Thus, the essence of Section 302 may be summarized as follows: No fund derived from employer contributions may be administered by persons designated by a union unless the fund meets the standards set forth in Section 302(c) (5). * * *"

We have no doubt that the fund is presently "administered" by the union within the intendment of the Mechanical Contractors Case. There, the union contended that the joint board of trustees was a mere conduit through which the funds passed. In disposing of this argument, Judge Staley said, 265 F.2d at pages 611–612:

"* * * This assertion completely ignores the veto power lodged in the hands of the union designees on the board, for without the approval of two of them no payments could be made to the Association. A veto power over the uses to which funds may be put certainly constitutes an effective control of the fund. Such control of the use of the funds contributed by employers is comprehended within the broad statutory language utilized by Congress. * * *"

The union here is in the same position. The joint letter from the union's lawyer and the employer's lawyer effectively prevents dispersal of the fund without union agreement. It must be held by the bank "pending the submission of a trust agreement". Thus, the union can effectively prevent the withdrawal of the fund by the simple expedient of refusing to enter into such an agreement. Indeed, two years have already passed since the consummation of the supplemental agreement without a trust agreement that would satisfy § 302(c) (5). If the employer eventually becomes restive and wants its money back until an agreement is reached, it cannot get it unless the union consents. We can imagine no more effective control. In sum, we have a payment by an employer, control of the fund by the union, and no compliance with § 302(c) (5) to bring the payment within the permitted exceptions. The payment therefore violates § 302(a) and (b).

Section 302(e) gives this court jurisdiction to restrain violations of the Act. While plaintiffs have not sought this particular form of injunctive relief, nevertheless where any relief is available on the allegations of the complaint a motion under F.R.Civ.P. 12(b) cannot be granted: Dotschay for Use and Benefit of Alfonso v. National Mutual Ins. Co., 246 F.2d 221 (C.A.5, 1957); Dudley v. Zappa, 24 F.R.D. 427 (S.D.N.Y., 1959); cf. F.R.Civ.P. 54(c).

Motion denied.