Kathleen **MOGLIA**, Plaintiff,

v.

James **GEOGHEGAN** et al., Defendants.

No. 66 Civ. 2793.

United States District Court
S. D. New York.

April 27, 1967.

Englander & Englander, New York City, for plaintiff (Herman Englander, New York City, of counsel).

Cohen & Weiss, New York City, for defendants (Samuel J. Cohen and Stanley M. Berman, New York City, of counsel).

OPINION

RYAN, District Judge.

Plaintiff and defendants have moved for summary judgment. On the undisputed and stipulated facts, for the reasons hereinafter given, we have denied plaintiff's motion and granted defendants judgment on the merits.

Plaintiff is the widow of John J. Moglia, who at the time of his death on August 7, 1966 was a member in good standing of Local Union No. 282, affiliated with the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers. Plaintiff has filed this action under Section 302 of the L.M.R.A. (Section 186 Title 29, U.S.C.) for a judgment declaring that she, as Moglia's widow, is entitled to payments under the Pension Plan of Local 282—Pension Trust Fund, established under Section 302(c) (5) of the Act—of $200 per month for a period of 36 months commencing May 1, 1965 and directing the defendants, as Trustees of the Fund, to make such payments.

Defendants, Trustees, denying plaintiff's right to such payments from the Pension Trust Fund, have counterclaimed for judgment declaring that plaintiff is not entitled to the Pension Trust Fund payments she seeks.

Plaintiff contends that, since her deceased husband's employer had made payments to the pension trust fund on behalf of its employee, and the Trustees had accepted these payments, they should be and are equitably estopped from denying pension benefits to her.

The defendants, Trustees' position is that, since the statute providing for pension trust funds requires the existence of an agreement spelling out the detailed basis on which payments to it are to be made, in the absence of such an agreement, the Trustees would be violating the statute if they were to make the payments sought, that their decision not to do so has been made in good faith and that there is no equitable estoppel requiring them to do otherwise.

It appears undisputed that Moglia, prior to his death and on April 15, 1965, had filed an application with the Trustees for a pension and that the Trustees had denied the application on the ground that Moglia's employer, Elmhurst Contracting Company, Inc. (from 1937 through March 31, 1965) had never signed a collective bargaining agreement with Local 282.

Although the complaint pleads to the contrary, it has now been stipulated by plaintiff that there never was a collective bargaining agreement between the employer of plaintiff's husband and the Union.

The motions before us present but one issue of law: may the defendants, Trustees, lawfully pay the pension benefits sought by plaintiff, as the widow of an employee of Elmhurst, in the absence of a collective bargaining agreement and a written trust agreement between the employer and the Union. We have concluded that they may not.

We accept the following undisputed facts:

For many years prior to his death, decedent was a member in good standing of Local Union No. 282, a labor organization representing employees of employers engaged in industries affecting commerce within the meaning of Section 302(a) (2) of the Labor Management Relations Act of 1947, as amended. From 1937 until April, 1965, the decedent was employed by Elmhurst Contracting Company, Inc., or its successor, both of which were employers within the meaning of Section 302(a) of the Act. From July 1, 1953, through March 31, 1965, the employer of decedent made payments to the Fund on behalf of the decedent, and such payments were received and accepted by the Fund. On April 15, 1965, the decedent filed an application for a pension with the Fund and thereafter defendants, as Trustees of the said Fund, rejected this application for a pension.

The decedent's age, length of service, and other qualifications for benefits under the Pension Plan of the Fund at the time of filing his application for a pension, and subsequent thereto up to the time of his death, were such that, if he was entitled to benefits under the said Pension Plan, he would have been entitled to payments for life commencing May 1, 1965, at the rate of $200.00 per month. If the decedent was entitled to receive benefits for life commencing May 1, 1965, at the rate of $200.00 per month,

the decedent not having received any such benefits up to the time of his death, plaintiff, as the surviving wife of the decedent, would be entitled, pursuant to Article II, Section 8 of the Local 282-Pension Plan, as amended, to receive payments for a period of 36 months commencing May 1, 1965, at the same rate.

The collective bargaining agreements between Local 282 and employers of employees represented by it require regular specified payments to be made by such employers to the Fund on behalf of their employees. Elmhurst never signed a collective bargaining agreement with Local 282 but it made the payments apparently in the amounts required under the applicable collective bargaining agreement as though it had executed such agreement.

No claim is made that the Trustees acted in bad faith in refusing to make payments to plaintiff. It is uncontroverted that they are acting on advice of counsel. When Moglia's application on the basis of his employment with Elmhurst was received at the Trustees' office in April, 1965, a search was made by the Fund Administrator for a copy of the collective agreement and counterpart trust fund agreement, but none could be found. A further search was made by the Fund Administrator in the files of the Union office and none found there; the Fund Administrator then inquired of the officials of the Union and was informed that none had ever been entered into in spite of the Union's many attempts to have Elmhurst execute one.

The claim of the Local that, for many years, it had attempted to have Elmhurst execute such an agreement and that it repeated its attempts recently after the rejection of plaintiff's application, is undisputed. [It appears that even as of this late date such an execution could validate pension payments to plaintiff (Bey v. Muldoon, D.C., 217 F.Supp. 401).]

These facts were reported to the Trustees at their meeting on June 15, 1965 and action was deferred until they had consulted counsel. At the following meeting of Trustees, which decedent attended with his attorney, the Trustees were informed that Elmhurst had been paying into the Fund and that they had been accepting such payments into the Fund. On the opinion of their attorney that they could not legally pay Moglia pension benefits, they rejected his application and, on March 1, 1966, a check in the amount of $4,435.93, representing $3,500 paid on behalf of Moglia and other employees, was sent to Elmhurst, one of whose officers promptly returned it because he understood that Moglia's attorney was contemplating legal action. The sum remains segregated for Elmhurst subject to the Court's disposition of the action.

The Pension Trust Fund was created in 1955 by Local Union No. 282 with various employers who had entered into collective bargaining agreements with the Union and 14 Trustees—4 designated by the Union and 10 designated by the employers, exercising control by one vote each.

It was founded by execution of an agreement and declaration of trust—the "Trust Agreement" as the successor to other trust funds in which the Union had theretofore participated.[1]

The condition precedent that there be a collective bargaining agreement is stated by the recital in the preamble that "the Union and the Employers have entered into written collective bargaining agreements requiring payments by the Employers for the purpose of providing a pension and welfare program for the employees covered by said agreements * * *". The Trust Agreement (T.A.) and the Rules and Regulations of the Pension Fund (R & R) set forth the following definitions.

Employer: Each employer who has duly executed a collective bargain-

---

1. This Agreement was amended through April 15, 1965 (the date on which plaintiff's husband applied for a pension), but in no significant respect as to its terms and definitions.

ing agreement with the Union and who is a signatory to this agreement, and also any employer not presently a party to such collective bargaining agreement who hereafter executes such agreement provided that such employer satisfies the requirements for participation as established by the Trustees and agrees to be bound by the terms and provisions of this Agreement and Declaration of Trust, and becomes a party hereto. (Article I, § 1, T.A.)

Any employer who is obligated by his collective bargaining agreement with the Union to contribute to the Pension Trust Fund. (Art. I, § 4, R & R)

Employee: All Employees covered by and who fulfill the conditions of the collective bargaining agreements in effect between the Employers and the Union. (Art. I, § 3, T.A.)

Any person who is employed by an Employer in an employment for which the Employer is obligated by his agreement with the Union to contribute to the Pension Trust Fund. (Art. I, § 5, R & R)

Employer Contributions:

Payments by Employers to either of the Trust Funds created in accordance with the collective bargaining agreement. (Art. I, § 7, T.A.)

Collective Bargaining Agreement:

Any written collective bargaining agreement entered into between an Employer and the Union. (Art. I, § 11, T.A.)

Any written collective bargaining agreement executed by an Employer and the Union requiring contributions to the Pension Fund. (Art. I, § 9, R & R)

Under the Trust Agreement, the Union and the Employer created and established with the Trustees the Local 282 Pension Trust Fund with monies derived from Employer contributions "pursuant to written collective bargaining agreements made for the purpose of providing pension benefits", and empowered the Trustees to formulate rules and regulations relating to eligibility of Employees. It also provided that:

"The Trustees shall have power to construe the provisions of this Agreement and Declaration of Trust and the terms. used herein and any construction adopted by the Trustees in good faith shall be binding upon the Union, the Employees and the Employers." (Art. V, § 3, T.A.)

The relevant provision of the Trust Agreement is Article V, Section 4. Section 4(a) permits the Trustees to pay necessary expenses. Section 4(b) states. the only purpose for which the Fund may be used or applied is as follows:

"(b) To pay or provide for the payment of retirement or other benefits. to eligible Employees in accordance with the terms, provisions and conditions of the pension plan to be formulated and agreed upon hereunder."

Under the Rules and Regulations, it is further provided that:

"An eligible Employee who makes application in accordance with these rules shall be entitled, upon retirement, to receive the monthly benefit provided for the remainder of his life, subject to. all the provisions of this Pension Plan." (Art. VI, § 1, R & R)

Respecting Employers' contributions, it provided that:

"detailed written reports shall be submitted to the Trustees by the Employers together with each payment * * *. The Trustees may at any time audit the pertinent books and records of any Employer in connection with the above." (Art. VI, § 1(c), T.A.)

and that

"Each Employer shall promptly furnish to the Trustees on demand any and all records of his Employees concerning the classification of such Employees, their names, social security numbers, the amount of wages paid, and hours worked, and any and all other payroll records and information that the Trustees may require in con-

nection with the administration of the Trust and for no other purpose. Each Employer shall also submit in writing to the Trustees at such regular periodic intervals and in such form as the Trustees may establish such of the above data and information as may be requested by the Trustees. The Trustees, or their authorized representatives, may examine and audit the pertinent payroll books and records of each Employer whenever such examination or audit is deemed necessary or advisable by the Trustees in connection with the proper administration of the Trust." (Art. IX, § 1, T.A.)

The Agreement also anticipates the disqualification of an Employer as defined in Article I and the cessation of benefits under the Pension Fund to the Employees, their wives and children (Art. VII, §§ 1 and 2).

Since 1959, a collective bargaining agreement typical of the collective bargaining agreements in effect between the Union and various employers has been printed together and physically attached to the front of the Trust Agreement. Section 12 of the Collective Bargaining Agreement in evidence (typical of the agreement in force when plaintiff applied for a pension) gives the detailed basis upon which the employers are required to contribute to the Fund—that is, the dollars and cents for each employee for each hour, the limit on the payments and the time when payments are due:

"Section 12. The Employer shall contribute 17½¢ per hour (not to exceed $1.40 per day) (Effective January 1, 1964: 18½¢ per hour, not to exceed $1.48 per day) for each and every hour paid for, including regular work days, Saturdays, Sundays, holidays and vacation days, to the Local 282 Welfare Trust Fund, and 33¢ per hour (not to exceed $2.64 per day) for each; and every hour paid for, including regular work days, Saturdays, Sundays, holidays and vacation days, to the Local 282 Pension Trust Fund, the said contribution to be paid on or before the 10th day of each month covering all payroll periods ending during the preceding calendar month, or at such other intervals as may be required by the Trustees of said Funds. The Employers shall execute the Trust Agreement governing the said Trust Funds and shall comply with all requirements of the Trustees established pursuant to the Trust Agreement."

The Pension Plan itself, containing Rules and Regulations, is printed in a booklet which is mailed to each person on the mailing list kept by the Pension Fund Office. The mailing list, consisting of 7000 persons, contains the names of employees on behalf of whom payments have been made to the Fund. Plaintiff's husband's name was on this list and he apparently received one or more of these booklets.

While it is conceded by plaintiff that, to be an "employee" within the meaning of the Pension Plan, it is required that the employer be obligated by his agreement with Local 282 to contribute to the Fund, and that regulations established by the Plan and the Trustees will generally be upheld, she contends that they must be reasonable and fair and not in violation of either the letter or spirit of the Act.

This brings us to the statute and to the extent of the jurisdiction of this Court in the matter. We hold our jurisdiction to be limited to inquiry as to whether there has been a violation of the statute either in its letter or its spirit, and that there does not rest in the Court a general power to dictate, rephrase or interfere with the provisions of an agreement freely entered into between the Union and the Employers for the benefit of the employees, regulating coverage and eligibility, and imposing conditions on both. These are matters which the statute has entrusted to the Trustees (Rittenberry v. Lewis, D.C., 238 F.Supp. 506).

The statute mandates the very requirements for eligibility to participate in the Trust Pension Funds, which are set forth in the Trust Agreement Plan and in the

Rules and Regulations of the Trustees. The provisions of the Plan and the Rules are in strict accordance with both the letter and spirit of the statute.

Section 186(a) and (b), Title 29, U.S.C., provides:

"(a) It shall be unlawful for any employer * * * to pay, lend, or deliver, or agree to pay, lend or deliver, any money or other thing of value—

(1) to any representative of any of his employees who are employed in an industry affecting commerce; or

(2) to any labor organization, or any officer or employee thereof, which represents, seeks to represent, or would admit to membership, any of the employees of such employer who are employed in an industry affecting commerce;

\* \* \* \* \* \*

"(b) (1) It shall be unlawful for any person to request, demand, receive, or accept, or agree to receive or accept, any payment, loan, or delivery of any money or other thing of value prohibited by subsection (a)."

Violations of Section 302 are misdemeanors punishable by a $10,000 fine, a year in prison, or both.

Section 302(c) carves out by subdivision (5) thereof very limited exceptions to this clear prohibition of money passing from management to labor, stating that the provisions of (a) and (b) shall not apply

"(5) with respect to money or other thing of value paid * * * to a trust fund established by such representative, for the sole and exclusive benefit of the employees of such employer, and their families and dependents * * * Provided, That (A) such payments are held in trust for the purpose of paying * * * pensions on retirement or death of employees * * * (B) the detailed basis on which such payments are to be made is specified in a written agreement with the employer, and employees and employers are equally represented in the administration of such fund * * * and (C) such payments as are intended to be used for the purpose of providing pensions or annuities for employees are made to a separate trust which provides that the funds held therein cannot be used for any purpose other than paying such pensions or annuities; * * * *"

Conformity with the statutory requirement that the funds be used exclusively for employees of such employers and that the payments to provide pensions or annuities be made into a separate fund from which no other benefits were to be paid, was assured by limiting benefits for which payments might be made from the fund to benefits under a pension plan for employees, defined as those covered by collective bargaining agreements between their employers and the Union. So also was conformity with the requirement that the detailed basis on which the employer's payments were to be made be specified in a written agreement with the employer, assured by defining employers' payments as payments from employers who are required to make such payments pursuant to executed written collective bargaining agreements with the Union.

While the statute does not specify that the written agreement be a collective bargaining agreement, it certainly encompasses such an agreement or even two related contracts, such as the parties here had—one for the purpose of establishing the Fund and for imposing conditions for membership in the Fund; and the other for specifying the basis of the contributions. The reported cases filed under this statute disclose that the usual trust fund agreement is bottomed on a collective bargaining agreement. It is difficult to imagine a situation where it would be otherwise.

The conditions imposed on the parties to the Trust Agreement Plan and the Rules and Regulations to enforce these conditions, are reasonable and fair, and drafted to adhere strictly to the statutory requirements. The background of this law and the cases interpreting it, leave no doubt that, if there is one essen-

tial element without which these funds cannot lawfully exist, it is that there be a written agreement specifying the source and amounts of money to be paid into and to be disbursed from the Fund. It was the absence of just such a formal agreement identifying and allocating the moneys being collected from employers by Union representatives ostensibly for the employees' "Welfare Fund", which outlawed those payments. Congress recognized that the effect of such gifts, if not their very purpose, was to destroy the impartiality of the representative of the employees, whose interests often conflicted with those of the employer. United States v. Ryan, 350 U.S. 299, 76 S.Ct. 400, 100 L.Ed. 335; International Longshoremen's Association v. Seatrain Lines, 326 F.2d 916 (C.A.2, 1964).

This is not, as plaintiff would argue, a technical provision or regulation, but the sine qua non of the payments permitted to be made.

This was pointedly observed in the holding that, "[u]nless the payment by the employer falls in all respects within the provisions of § 302(c), both as to the substantive purpose and the procedural administration and written formalization, it violates § 302(a) and (b)." Bey v. Muldoon, supra.

The cases cited by both parties are in support. In Dunbar v. Painters & Glaziers Dist., D.C., 129 F.Supp. 417, the Court would not permit the employers who had a collective bargaining agreement as well as a trust agreement to attempt to escape the provisions of the trust agreement requiring them to contribute. In Rittenberry v. Lewis, supra, it emphasized the requirement that for an employee to receive benefits he must be an employee of "a contributing employer" who has paid into the fund, i. e., like a party to a group insurance plan. In Blassie v. Kroger, 8 Cir., 345 F.2d 58, it expressly upheld the necessity under Section 302(c) (5) (B) of a written agreement for "employers subject to collective bargaining procedure with the union", as distinguished from the Fund's employees whose employer was obviously not so subject. And United States v. Ryan, supra, brushed away all narrow notions of the meaning of the term "representative of employees" as used in the statute, to include Union Trustees. Shapiro v. Rosenbaum, D.C., 171 F.Supp. 875, illustrated this by permitting payments to trustees of a trust, who were totally disassociated in any capacity with any labor union or group of employees, in the absence of the written agreement required by the statute.

Defendants' contentions that payments here sought are prohibited by the statute, are thus well supported. Of course, such argument acknowledges that in accepting the payments from "Elmhurst" for the past 13 years with knowledge, if not actual, certainly imputed, the Trustees were also engaged in violating the statute because acceptance of the moneys by the representative of the employees from the employer is what is literally prohibited by the statute, and by necessary and logical extension, the distribution of those moneys to the employees. If receipt is unlawful, paying out is equally unlawful. As defendants say: "Trustees who accept payments from employers must be certain that the requirements are fully satisfied. Laxity is not excused by good intentions."

Plaintiff argues that the purpose of the statute is to benefit the employee; that this was what "Elmhurst" was engaged in doing with the knowledge of the Trustees; that the payments were for the benefit of the employees and not adverse to their interests; that plaintiff and her husband knew this and, relying on these payments, looked to them for their future security; and that to deprive them of the expected benefits through a technicality is what will work the injury. While such an argument is emotionally appealing, it is not relevant.

Assuming that plaintiff's husband, a union member of long standing, did not know that his employment was not covered by a collective bargaining agreement, but, because pension fund payments were being made, he assumed that he was in fact, covered, we find that he

knew of the requirement of a collective bargaining agreement. The motives and purposes of "Elmhurst" and of the Trustees are immaterial. The statute is not limited to conscious wrongdoing. It condemns, outside of the stated exceptions, any and all gifts, no matter how trifling and innocuous; no matter what their motive, and it might be one of pure friendship or generosity; and no matter the circumstances. United States v. Ryan, 232 F.2d 481 (C.A. 2, 1956); I.L. A. v. Seatrain Lines, supra. Had Congress wanted to except all payments, which were clearly for the benefit of the employees, it could have done so; it did not provide for such broad exceptions. If such a conclusion sounds heartless, it is well to note that, even in this seemingly innocent situation, there lurks a real evil—and it is that this was not an isolated instance for "Elmhurst" apparently attempted to make payments for other employees besides plaintiff's husband. Voluntary as these payments were, while these employees were in favor, the payments might continue; if the employees fell out of favor, the payments could be reduced or completely stopped, with no recourse on their part, placing them in the unenviable situation of being at their employer's mercy in this most important respect; not to mention, of course, the discriminatory treatment among them if only some and not all were attempted to be benefitted. Making an exception of this case would frustrate the purpose of the statute, which is to benefit and promote the welfare of the employee. For, to pay out from a common fund in which all employees have a common as well as a separable right to employees not covered by collective bargaining agreements equally with those so covered, would certainly undermine the strength of collective bargaining, with resultant prejudice to the employee. It would encourage employers not to enter into them, if they could procure for their employees, at will and whim, benefits similar to those so covered without obligating themselves to any of the other conditions.

It also would prevent the setting up of Trust Funds on "a financially or actuarally sound basis." Rittenberry v. Lewis, supra. All of these are evils which the written collective bargaining agreement and the Trust Fund Agreement would obviate. The deliberateness of "Elmhurst's" conduct in this respect and its indifference to plaintiff's situation, is evidenced from the fact that, although it could still legalize these payments and permit the pension benefits to be paid to plaintiff by entering into a collective bargaining agreement and a Trust Agreement now, it has refused to do so. Bey v. Muldoon, supra; see also Sec. I, Art. I, T.A.

It follows from this that plaintiff's theory of estoppel will not lie to compel the Trustees to continue violating the law, assuming that the other elements necessary to constitute an estoppel in law were present and which appear unlikely in view of the fact that, by receiving the booklets describing the Pension Fund and "eligible employees", plaintiff's husband was constantly put on notice that his employment had to be covered by a collective bargaining agreement before he could enjoy the benefits of the Fund.

Our conclusion is not to be interpreted as condoning the actions of the Trustees here, especially those of the Union Trustees; that, at best, they were grossly negligent is clear; how, in the face of the detailed reports required to be filed by a contributing employer specifying name, date, salary, of the audits required of an employer's books and payroll records—which it appears here they did conduct on a spot check basis—they could go on for these many years not knowing that "Elmhurst" was not covered by a collective bargaining agreement, when all the time the Union was allegedly making unsuccessful attempts in this direction, is really beyond our understanding. But the fact that the situation is a suspicious and strange one is a still further reason for not permitting any further opportunity to evade the statutory requirements.

The motion of plaintiff for summary judgment is denied and that of defendants for summary judgment is granted; the complaint is dismissed with costs and the Clerk is directed to forthwith enter such judgment.