119 N.J. Super. 196 (1972)
290 A.2d 744
SHALLCROSS EXPRESS, INC., PLAINTIFF,
v.
LOCAL 478 TRUCKING AND ALLIED INDUSTRIES PENSION FUND, DEFENDANT.
Superior Court of New Jersey, Law Division.
Decided April 14, 1972.
*198 Mr. Joseph J. Triarsi for plaintiff (Messrs. Pisano and Triarsi, attorneys).
Mr. Thomas Parsonnet for defendant (Messrs. Parsonnet, Parsonnet & Duggan, attorneys; Mr. E. Barclay Cale, Jr. of the Pennsylvania Bar (Messrs. Morgan, Lewis & Bockius, Philadelphia, Pa., of counsel).
FELLER, J.S.C.
These are motions and cross-motions for summary judgment.
Plaintiff Shallcross Express, Inc. (Shallcross) has instituted this action to recover from defendant Local 478 Trucking and Allied Industries Pension Fund (Fund) the sum of $12,904.19, alleging that it is entitled to this sum under the principle of unjust enrichment. Shallcross has obtained an order to show cause why judgment should not be entered in this amount and the Fund has filed a motion for summary judgment, also claiming the above amount. Oral arguments have been heard by this court on two occasions, and supplemental briefs have been filed as a result. Consequently, this matter will be decided on a motion and cross-motion for summary judgment.
The facts are not in dispute. Shallcross, a trucking company, has for years been a party to a collective bargaining agreement with Union Local 478, Truck Drivers and Chauffeurs Union, which agreements do not cover all of Shallcross' *199 employees, but only those in the recognized bargaining unit. Supervisory personnel, dispatchers and mechanics are expressly excluded from the bargaining unit and are not covered by the bargaining agreement.
Under the terms of the collective bargaining agreement Shallcross is obligated to contribute to a pension fund on behalf of those of its employees in the bargaining unit. Article IV, section 1 of the agreement and declaration of trust requires Shallcross to contribute to the Fund the amount required by the collective bargaining agreement in effect between the union and Shallcross. Article II, section 4 provides for the use of the funds so collected, including payment of retirement benefits, to eligible employees and their beneficiaries. The term "employees" is defined in article I, section 2 to mean "all persons covered by collective bargaining agreements between the employers and the Truck Drivers and Chauffeurs Union, Local 478, I.B. of T., which require contribution to the pension fund." The trust agreement is thus expressly limited to employees in the bargaining unit and does not extend to all employees.
In September 1956 Shallcross began to make contributions to the Fund on behalf of Albert Bamberger, who at the time was a truck driver and a member of the bargaining unit. In October 1965 Bamberger ceased being a driver and became a dispatcher. As a dispatcher Bamberger left the bargaining unit, but Shallcross nonetheless continued to make contributions to the Fund with respect to him until April 1970.
In December 1956 Shallcross began making payments to the Fund with respect to George E. Henshaw, Jr., who at the time was employed as a helper and as such was a member of the bargaining unit. In January 1959 Henshaw left the bargaining unit when he became a mechanic, but Shallcross nonetheless continued to make contributions to the Fund for him until April 1970.
In September 1960 Shallcross began making payments to the Fund with respect to Thomas H. Gaffney, who at the *200 time was a driver and a member of the bargaining unit. In January 1963 Gaffney left the bargaining unit when he became a foreman, but Shallcross nonetheless continued to make payments to the Fund on his behalf until April 1970.
In May 1970 the fact that Bamberger, Henshaw and Gaffney were not members of the bargaining unit was brought to the attention of the Fund. Shallcross was thereupon directed not to make any further contributions with respect to these individuals. Shallcross requested a refund of all payments it had ever made with respect to these three individuals, and the Fund declined. Shallcross has now instituted this suit in an attempt to recover all payments made with respect to these employees.
Plaintiff claims that the contributions made in behalf of Bamberger, commencing in December 1956 and concluding in December 1970, amounted to $4,517.08. Plaintiff also contends that contributions made on behalf of Henshaw, commencing in December 1956 and concluding in April 1970, amounted to $4,537.37, and contributions made in behalf of employee Thomas H. Gaffney, commencing in September 1960 and concluding in April 1970, amounted to $3,849.74.
During the time the contributions were made by plaintiff to defendant, no immediate benefits were conferred upon plaintiff or the three employees. Any and all benefits, if they were deemed to be due and owing by defendant, were to be conferred upon application by the employee and a finding of eligibility by the pension plan upon reaching the proper age, or as otherwise provided in the agreement attached thereto. As stated above, plaintiff's total contributions on behalf of the employees named were in the amount of $12,904.19.
In 1970 Bamberger filed an application for pension benefits with the Fund. Its board of trustees notified him on or about August 24, 1970 that his application had been denied and that he was not eligible for benefits on the theory that, although a card-carrying member of Local 478, he had had *201 a change in job classification in October 1965; that he was not eligible for pension benefits because on the date of that change he had not as yet reached the required minimum age.
On or about May 1, 1970 Local 478 Union's executive board determined that Henshaw was working outside of union job classification and that he must take a withdrawal card from the union. On or about May 5, 1970 plaintiff received notification from Milton A. Liss, administrator of the Joint Welfare Fund of Local 478, notifying it not to include Henshaw in its May remittance forms to the Fund; to omit him from all future remittance forms since he was not eligible to participate in the Fund, and that the Fund cannot accept contributions from it.
On or about May 5, 1970 a similar correspondence was received from the Fund regarding the ineligibility of Bamberger and also excluding from eligibility Gaffney, who likewise was a member of Local 478 until on or about May 1, 1971. He was required to take a withdrawal card from the union and declared ineligible to participate or have contributions made on his behalf to the pension plan.
Plaintiff does not contend that it is entitled to a rebate of any contributions made to the welfare plan, but only for those contributions made to the pension plan, inasmuch as the benefits to be derived from the pension plan were benefits in futuro, and consequently the individuals named heretofore had not received any benefits from defendant during the course of their employment with Shallcross or as members of Local 478.
Plaintiff, upon being advised of the ineligibility of Bamberger, Henshaw and Gaffney, ceased making contributions to the pension and welfare plans on their behalf. Sometime thereafter plaintiff made a demand for a refund of the contributions previously made on behalf of the above-named individuals. Plaintiff was advised that no refund would be forthcoming. A similar request was made for a refund of the contributions on or about August 12, 1971 and August 16, 1971. On or about August 31, 1971 defendant again *202 declined to refund the contributions previously made. Plaintiff thereupon instituted this action upon verified complaint and order to show cause why these monies, which plaintiff contends are unjustifiably withheld by defendant, should not be remitted to it.
Section 23(c), (d), (e) and (f) of the agreement provides for certain payments per hour into the Fund for each employee for straight time worked.
Defendant contends that plaintiff is not entitled to a return of the contributions made because the rules and regulations governing the Fund form the basis for the actuarial assumptions which are employed to maintain the fiscal integrity of the Fund. Defendant further contends that one of these regulations requires that if an employee leaves the bargaining unit before becoming eligible for a pension, or before his right vests, all contributions paid on behalf of that employee lapse and remain in the Fund for the benefit of the other beneficiaries of the Fund. Defendant also contends that plaintiff was guilty of fraud and thus has waived its right to the return of the contributions made.

I
As stated above, the term "employees" is defined in article I, section 2, to mean "all persons covered by collective bargaining agreements between the Truck Drivers and Chauffeurs Union, Local 478 I.B. of T. which require contributions to the pension fund." The trust agreement is thus expressly limited to employees in the bargaining unit and does not extend to all employees.
Article II, section 4(b) provides that the money in the Fund shall be used "to pay or provide for the retirement benefits to eligible Employees and their Beneficiaries in accordance with the terms, provisions and conditions of the Rules and Regulations of the Pension Plan above described."
Thus, the above two provisions in effect provide that pension contributions shall be made in behalf of employees who *203 are eligible  that is, those employees who are covered by the collective bargaining agreement  and that the Fund should be used to provide for retirement benefits for such "eligible" employees.
Thus, it is evident that when the words "employee or employees" are used in the agreement, it means "eligible employees" as stated above. Section 23(a) of the pension plan provides that the employer agrees to participate in the Fund established for the purpose of accepting contributions from it at periodic intervals for its (eligible) employees in order to provide a pension plan for the (eligible) employees, and, as stated, section 23(c), (d), (e) and (f) of the agreement provides for certain payments per hour into the Fund for each (eligible) employee for straight time worked.
The contribution paid by Shallcross to the Fund on behalf of Bamberger between September 1956 and October 1965 when he ceased being a driver and became a dispatcher, and thus was no longer a member of the bargaining unit, cannot be recovered from the Fund, because these payments were made during the period that Bamberger was an "eligible employee" under the above agreement. Those payments became part of the Fund to be used for pension benefits to eligible employees.
The contributions paid by Shallcross to the Fund on behalf of Henshaw between December 1956 and January 1959 when he ceased being a helper and became a mechanic, and thus was no longer a member of the bargaining unit, cannot be recovered from the Fund because these payments were made during the period that Henshaw was an "eligible employee" under the above agreement. Those payments, too, became part of the Fund to be used for the payment of pension benefits to eligible employees.
Likewise, the contributions made by Shallcross to the Fund on behalf of Gaffney between September 1960 and January 1963 when he ceased being a driver and became a foreman, and thus was no longer a member of the bargaining unit, cannot be recovered from the Fund because these payments *204 were made during the period that Gaffney was an "eligible employee" under the above agreement. Those payments also became part of the Fund to be used for pension payments to eligible employees.
Thus, defendant Fund is entitled to retain the contributions made by plaintiff Shallcross on behalf of the three mentioned employees during the periods set out above when they were "eligible employees" under the terms of the collective bargaining agreement.
This conclusion is in accordance with the provisions of 29 U.S.C.A. § 186(c), which states:
* * * such payments as are intended to be used for the purpose of providing pensions or annuities for employees are made to a separate trust which provides that the funds held therein cannot be used for any purpose other than paying such pensions or annuities. [Emphasis added]
The payments made during the period that the above three employees were eligible were intended to be used for pensions for eligible employees.
After a thorough study of the collective bargaining agreement, this court is of the opinion that if an employee leaves the bargaining unit before becoming eligible for a pension or before his rights vest, all contributions theretofore paid on behalf of that employee shall lapse and remain in the Fund for the benefit of the beneficiaries of the Fund.

II
It is the opinion of this court, however, that defendant Fund is not entitled to retain the contributions made after the above-mentioned employees became ineligible for pension benefits. Plaintiff Shallcross is entitled to reimbursement for payments made after October 1965 when Bamberger ceased being a driver and became a dispatcher, and thus was no longer a member of the bargaining unit. It is also entitled to reimbursement for payments made after January *205 1959 when Henshaw ceased being a helper and became a mechanic, and thus was no longer a member of the bargaining unit. And Shallcross is also entitled to reimbursement for payments made after January 1963 when Gaffney ceased being a driver and became a foreman, and thus was no longer a member of the bargaining unit.
When the status of the above employees was changed and they were no longer covered by the terms of the collective bargaining agreement from the dates of these changes, they were in the same position, from the date of the change, as employees who were never eligible and were never covered by a collective bargaining agreement.
In Moglia v. Geoghegan, 403 F.2d 110 (2 Cir. 1968), which affirmed the decision of the trial court, 267 F. Supp. 641 (D. Ct. 1967), a widow sought a declaratory judgment of entitlement to pension payments from a trust fund created from contributions made by the employer for many years. The court held that where the employer and union had never executed a collective bargaining agreement, nor had the employer ever executed a written trust agreement for union's pension fund, payment by the trustees to the employee's widow of pension benefits was prohibited under the provisions of Labor Management Relations Act which conditioned membership in the fund on a collective bargaining agreement between employer and union.
The court further stated that the only employer contributions which may be accepted by trustees of a legally established union pension fund are those by employers who have written agreement with the union. Labor Management Relations Act of 1947, §§ 302, 302(c)(5)(B) as amended; 29 U.S.C.A. §§ 186, 186(c)(5)(B).
It should be noted that in view of the fact that no agreement was ever executed in the above case, all of the employer's (Elmhurst's) payments were refunded to Elmhurst. However, Elmhurst refused to accept the refund pending termination of the litigation over the pension payments. The court further stated:
*206 For some reason, the Fund does not investigate pension eligibility until after an application for pension benefits has been filed, and, after Moglia applied, an investigation of Elmhurst's status with the Fund revealed that Elmhurst had never entered into a collective bargaining agreement or a pension trust with the Local although the Local had often requested it to do so. [403 F.2d at 114]
The court also said (at 118) that it would be illegal for the trustees to retain the contributions of Elmhurst or to pay the benefits to the appellant.
Thus, it is evident in the present case that just as it would be illegal for the Fund to pay benefits to the three employees, so would it be illegal for the Fund to retain the contributions made by Shallcross after the three employees became ineligible.
In Moglia, supra, at 119, fn. 7, the court said:
The Trustees of this Trust Fund have made a practice of accepting employer contributions without checking the Local records to ascertain whether or not the contributing employer has a written agreement with the Local detailing the basis upon which employer payments are to be made into the Fund. Instead of checking records when the contributions are received, as Section 302 requires, the Trustees have waited until an application for a pension is made by an employee of a contributing employer and then have checked to see if the employer's contributions and the Trustees' acceptance of the contributions conformed with both the Section 302 requirements and the provisions of the trust agreement. If the contributions and acceptance of the contributions were in violation of Section 302 or the trust agreement or both, then the innocent employee's pension request is denied. This practice has caused needless hardship in this case and could cause hardship in other cases involving innocent employees.
There is no provision in the agreement between the parties which provides that if an employee leaves the bargaining unit before becoming eligible for a pension, all contributions thereafter made in behalf of that employee after he became ineligible shall lapse and remain in the Fund for the benefit of the other beneficiaries of the Fund.
After the Fund determined that the above three employees were ineligible, it notified Shallcross to discontinue the payments to the Fund on their behalf. To refuse, on the one *207 hand, to accept contributions after they became ineligible, and to retain contributions made after they became ineligible on the other, seems to be a policy which has an element of inconsistency. Shallcross continued to make payments for the three subsequently ineligible employees. These payments were made for those not covered by that agreement, and the legal effect is that since these contributions were made for subsequently ineligible employees, there was no agreement as to them. Accordingly, the Fund is not entitled to retain them because they were made after the employees left the bargaining unit. See Moglia, supra.

III
The Fund contends that Shallcross was guilty of fraud in knowingly making these payments after the employees became ineligible  knowing that the employees were not eligible  with the intent to secure pension benefits for them. The Fund has submitted an affidavit to this effect, but its allegations have been denied by an affidavit submitted in behalf of Shallcross.
Assuming, arguendo, that the payments by Shallcross were made for the purpose of misrepresentation, it is difficult to see how the Fund (a) was deceived thereby, or (b) suffered damages as a result.
(A) As noted, in Moglia contributions were made by the employer who had not executed a collective bargaining agreement, in order to procure benefits for his employees. When the employees were subsequently determined to be ineligible, the question of these improper payments was raised.
The Moglia trial court held that:
* * * such argument acknowledges that in accepting the payments from "Elmhurst" for the past 13 years with knowledge, if not actual, certainly imputed, the Trustees were also engaged in violating the statute because acceptance of the moneys by the representative of the employees from the employer is what is literally prohibited by the statute, * * *. [267 F. Supp. at 647]
*208 The court went further:
The motives and purposes of "Elmhurst" and of the Trustees are immaterial. The statute is not limited to conscious wrongdoing. It condemns, outside of the stated exceptions, any and all gifts, no matter how trifling and innocuous; no matter what the motive, and it might be one of pure friendship or generosity; * * *. [at 648]
Additionally, it would seem that the obligation is upon the trustees of a fund, who are charged with the responsibility of collecting contributions and administering the trusts, to determine prior to the acceptance of any contributions that they were made on behalf of employees who are eligible. Their failure to do so is conduct to which knowledge of all the circumstances must be imputed. The Appellate court, in commenting on defendant's conduct in Moglia, indicated that this lackadaisical conduct should be discontinued, as explained above stating (403 F.2d at 119) that the trustees should check the records when the contributions are received, as section 302 requires, instead of waiting for an application for a pension to be made by an employee of the contributing employer.
In Branch v. White, 99 N.J. Super. 295 (App. Div. 1968), the court discussed the extent of a trustee's duties, stating:
The extent of the duties of a trustee depends primarily upon the terms of the trust. Where there is no provision, express or implied, in the terms of the trust, the duties of a trustee are determined by principles and rules which have been evolved by courts of equity for the governing of the conduct of trustees. 2 Scott Trusts (3d ed. 1967), § 164, p. 1254.
* * * Trustees are under a duty to the beneficiaries to administer the trusts solely in the interest of the beneficiaries. Restatement, Trust 2d, § 170, p. 364. [at 306]
Trustees have a duty to notify beneficiaries of the existence of the trust and that they are undertaking to act as trustees. See Lipic v. Wheeler, 362 Mo. 499, 242 S.W.2d 43-48 (Sup. Ct. 1931). They are required to make *209 full disclosure of all facts within their knowledge which are material for beneficiaries to know for the protection of their interests. In re Dryden's Estate, 155 Neb. 552, 52 N.W.2d 737, 746 (Sup. Ct. 1952); Mayfield v. First National Bank of Chattanooga, Tennessee, 137 F.2d 1013, 1018 (6 Cir.1943); Zottarelli v. Pacific States S. & L. Ass'n, 94 Cal. App.2d 480, 211 P.2d 23, 28 (D. Ct. App. 1949); see comment (D) to Subsection 173, Restatement, Trust 2d, at 378-379; see, generally, Bogert on Trust and Trustees (2d ed. 1952), § 961, and 2 Scott on Trusts (3d ed. 1967), § 164.
The court in Branch concluded:
Thus, in the instant case, while the trust agreement contained no specific direction to the trustees to notify employees of the requirements of the pension plan, it is our conclusion that defendants had an affirmative obligation to inform all employees of the conditions for participation in the plan * * *. As above stated, they were under a duty to fully inform the beneficiaries of the trust of all facts relating to the subject matter of the trust which were essential for the protection of the beneficiaries' interest. [99 N.J. Super. at 307]
The obligation and burden seem to be upon the trustees of a fund at the time they accept contributions to assure themselves that the contributions are made on behalf of eligible employees. Once having accepted the funds without having made this determination, they cannot thereafter allege that they have been defrauded into accepting the contributions because the ineligibility requirements had not been discovered at an earlier time.
Defendant has pointed out that in the remittance reports which Shallcross' agent, Allison, submitted quarterly he was to list the roster of employees who were in the collective bargaining unit represented by Local 478, and that the three employees were listed regularly after they became ineligible. However, the trial court in Moglia seemed to dispose of this problem when it stated in part as follows:
* * * how in the face of the detailed reports required to be filed by a contributing employer specifying name, date, salary, of the *210 audits required of an employer's books and pay-roll records  which it appears here they did conduct on a spot-check basis  they could go on for these many years not knowing that `Elmhurst' was not covered by a collective bargaining agreement, when all the time the Union was allegedly making unsuccessful attempts in this direction, is really beyond our understanding. * * * [267 F. Supp. at 648]
Furthermore, there was no fraud in Bamberger's application for a pension in which he listed his job classification as a "dispatcher," which classification made him ineligible for a pension.
Finally, in Employing Plasterers' Ass'n, etc. v. Journeymen, etc., 279 F.2d 92, 99, 100 (7 Cir.1960), the court stated, in effect, that the right of the association to bring the suit was not impaired by its knowledge and participation in the alleged statutory illegalities. Any party having a right to sue thereunder would almost certainly have participated in the alleged violations of section 302  employers by the making of outlawed payments, and unions by outlawed acceptance.
(B) Defendant Fund has not suffered any damages as a result of any alleged misrepresentation by plaintiff. In fact, it has been enriched by the contributions made after the employees were declared ineligible, by payments to which it was not entitled under the collective bargaining agreement.
Article IV, section 1(n) of the trust agreement, in setting out the general powers and duties of trustees, provides as follows:
(n) Power to determine the eligibility requirement for benefits and to adopt the Rules and Regulations of the Pension Plan in such manner and by such means as the Trustees in their sole discretion determine without undue depletion or excessive accumulation * * *. [Emphasis added]
To retain payments to which the Fund was not entitled under the terms of the collective bargaining agreement would seem to amount to "excessive accumulation" under the terms of the above provision. Under no circumstances can this be considered as damages.
*211 Both Shallcross and the Fund claim the full amount of the contributions made, amounting to $12,904.19. For the reasons stated above, this court has denied these claims and has directed the Fund to retain the contributions made while the three employees were eligible, and has directed plaintiff to recover the contributions made after they became ineligible. However, it is difficult to determine the exact amounts at this time.
Summary judgment will therefore be entered in favor of defendant Fund  in one lump sum  for contributions made by plaintiff Shallcross on behalf of Bamberger between September 1956 and October 1965; for contributions made in behalf of Henshaw between December 1956 and January 1959, and contributions made on behalf of Gaffney between September 1960 and January 1963, without interest and costs.
Summary judgment will be entered in favor of plaintiff Shallcross  in one lump sum  for all contributions made in behalf of Bamberger after October 1965; for contributions made on behalf of Henshaw after January 1959, and for contributions made on behalf of Gaffney after January 1963, without interest and costs.
Counsel will agree on the exact amounts and submit a consent judgment.