[No. 2285-1. Division One. August 11, 1975.]

GEORGE F. DOHRER, *Appellant*, v. CLYDE WAKEMAN, ET AL, *Respondents.*

*Davies, Pearson, Anderson, Gadbow & Hayes, P.S.,* and *Larry E. Levy,* for appellant.

*Perkins, Coie, Stone, Olsen & Williams, J. David Andrews, Richard S. Twiss, Annon W. May, Griffin & Enslow,* and *F. G. Enslow,* for respondents.

ANDERSEN, J.—

## FACTS OF CASE

The plaintiff is George F. Dohrer. At all times herein he was the unincorporated owner-operator of a small Tacoma taxicab business operating under the name "Washington Taxi."

As "Washington Taxi" the plaintiff paid contributions totaling $353.50 into the Western Conference of Teamsters Pension Trust Fund ("trust fund") on his own behalf. On reaching age 71, he applied for age retirement benefits amounting to some $140 per month for life.

At the time the pension application was processed, it was determined that plaintiff, as an employer, had been making payments into the trust fund on his own behalf. The application was thereupon denied on the grounds that under federal law and the terms of the agreements entered into by the plaintiff as an employer, contributions of employers on their own behalf were prohibited and only employees were entitled to such pensions.

The contributions plaintiff had made on his own behalf were thereupon tendered back to him. He rejected the tender and this suit followed.

Some additional background concerning the trust fund and the claim here sought to be enforced is relevant to the resolution of this controversy.

The trust fund in question was established in 1955 under the provisions of the National Labor Relations Act[1] as amended by the Labor Management Relations Act of 1947,[2] also referred to as the "Taft-Hartley Act."

As a Taft-Hartley trust, the trust fund is governed by equal numbers of union and employer trustees and is funded entirely by employer contributions.

The eligibility for benefits from the trust fund is determined by the provisions of the Labor Management Relations Act, the Agreement and Declaration of Trust of the Western Conference of Teamsters Pension Trust Fund

---

[1] 29 U.S.C. § 151 et seq.

[2] 29 U.S.C. § 141 et seq.

("pension agreement") and the Western Conference of Teamsters Pension Plan ("pension plan").

In 1966, the plaintiff doing business as Washington Taxi did, as an employer, sign a collective bargaining agreement with Local 313 of the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America ("Local 313"). That agreement required the plaintiff to make payments into the trust fund on behalf of his employees.

In order to begin making such payments, the plaintiff again under the name "Washington Taxi," signed an Employer Agreement Acceptance of Trust and Trustees ("employer agreement"). He then commenced making payments into the trust fund on behalf of his then employee and on his own behalf as well.

From the time the plaintiff began his sole proprietorship taxicab business in Tacoma in 1946, he occasionally had more than one cab and more than one employee. At no time did he incorporate his business.

As an employer, plaintiff entered into successive collective bargaining agreements with Local 313. Though an employer, he also maintained his membership in Local 313 at all times.

Plaintiff's suit against the trust fund alleged that he was lawfully entitled to a pension, and further, that having accepted the contributions which he made on his own behalf, the trust fund was estopped from denying him a pension.

Plaintiff also sued his union and certain of its present and past officers, business representatives and their spouses. These are the defendants Local 313, Wakeman, Schlosser, Phair and Clifton. He charged that they negligently misrepresented to him that he would receive a pension on making contributions as he did. He further claimed that these defendants were the agents of the trust fund and asks that the trust fund also be held liable on the basis of negligent misrepresentation.

Prior to the trial of this case, the trust fund's motion for a summary judgment of dismissal was granted. Plaintiff proceeded to trial against the remaining defendants. The case was tried to the court. What amounted to challenges to the sufficiency of the evidence at the close of the plaintiff's case were granted as to the remaining defendants.

Plaintiff here appeals all of the dismissals except those of the defendants Phair and Clifton.

## ISSUES

There are four basic issues in this case.

ISSUE ONE. Can an employer be the beneficiary of a Taft-Hartley trust?

ISSUE TWO. Can an individual employer be considered an employee for the purpose of qualifying for a pension under a Taft-Hartley trust?

ISSUE THREE. Are the trustees of an employee benefit pension fund estopped to deny a pension to an employer whose contributions into the fund on his own behalf were initially accepted by the trustees?

ISSUE FOUR. Was evidence presented from which a reasonable mind could infer that the plaintiff had justifiably relied on alleged misrepresentations made by Local 313's representatives to the plaintiff concerning his eligibility for pension benefits?

## DECISION

ISSUE ONE.

CONCLUSION. An employer cannot be the beneficiary of an employee benefit pension trust set up pursuant to section 302 of the Labor Management Relations Act of 1947 (hereinafter "Section 302"). 29 U.S.C. § 186.

■ Employee benefit funds established through the collective bargaining process and administered jointly by employer and union representatives have become an important means of financing benefits. Literally thousands of

health, welfare and pension plans are in existence covering millions of employees.[3]

These employee benefit funds are required to be held in trust in the manner prescribed by Section 302.

Section 302 is a criminal statute which generally prohibits payments by an employer to a representative of his or her employees and which also prohibits the receipt of such payments by the representative. 29 U.S.C. § 186.

Trust funds for the sole and exclusive benefit of employees, however, constitute an exception to the criminal sanctions of Section 302 and that section provides the legal basis for the establishment of such employee benefit funds. 29 U.S.C. § 186(c) (5) and (6).

The essential requirement which must be met by an employee benefit fund before it comes within the exception to the criminal sanctions of Section 302 is that the fund be *"for the sole and exclusive benefit of the employees of such employer*, and their families and dependents (or of such employees, families, and dependents jointly with the employees of other employers making similar payments, and their families and dependents). . . ." (Italics ours.) 29 U.S.C. § 186(c) (5).

The mandate of the statute is clear. So is the intent of Congress. U.S. Code Cong. & Ad. News 2360 (1959). A trust fund such as is here involved cannot include as a beneficiary an individual owner-operator such as the plaintiff, who is not an employee in a legal sense. *Moglia v. Geoghegan*, 403 F.2d 110, 116 (2d Cir. 1968), *cert. denied*, 394 U.S. 919, 89 S. Ct. 1193 (1969), *aff'g* 267 F. Supp. 641 (S.D.N.Y. 1967).

Issue Two.

Conclusion. An individual cannot be both an employer and his own employee for the purpose of qualifying for a

---

[3]U.S. Department of Labor Bulletin No. 1326 *Multiemployer Pension Plans under Collective Bargaining* (1960); U.S. Department of Labor, Office of Welfare and Pension Plans, Welfare & Pension Plan Statistics: Characteristics of 161, 750 Plans (1963).

pension under a pension plan set up pursuant to Section 302 of the Labor Management Relations Act.

Plaintiff seeks to avoid the clear language of Section 302 confining benefits to employees by urging this court to consider him as an employer for the purpose of making contributions but as an employee for the purpose of receiving them. He cites *Zentner v. American Federation of Musicians*, 343 F.2d 758 (2d Cir. 1965), *aff'g* 237 F. Supp. 457 (S.D.N.Y. 1965) as precedent.

*Zentner* is not in point. It held that the same person could function as both an employer and as a union member without running afoul of the Section 302 sanctions. Such a dual capacity, unlike that of employer and employee, is not inherently contradictory or inconsistent.

The plaintiff in the present case is an individual and cannot be both an employer, as he is, and at the same time be considered his own employee for the purpose of qualifying for a pension from the trust fund. To so construe Section 302 and the documents establishing the trust fund would be to disregard their plain language and finds no support under either federal statute or the common law. 29 U.S.C. § 152(2) and (3); *NLRB v. New Madrid Mfg. Co.*, 215 F.2d 908, 913 (8th Cir. 1954); *Hollingbery v. Dunn*, 68 Wn.2d 75, 79, 411 P.2d 431 (1966).

ISSUE THREE.

CONCLUSION. The trust fund cannot here be estopped into granting a pension to the plaintiff since to pay it would be an illegal act.

The checks by which plaintiff made his contributions to the trust fund bore the name "Washington Taxi" and were signed "George Dohrer." Thus, they did not unequivocally show on their face what the taxi company's form of business organization was.

█ Plaintiff nevertheless argues that the trust fund by accepting the payments he made on behalf of himself is now estopped from denying him a pension. He cites *Dorward v. ILWU-PMA Pension Plan*, 75 Wn.2d 478, 452 P.2d

258 (1969) in support of that position. *Dorward* is distinguished from the case at bar in that there was no issue in that case as to the legality of the employee's pension in question. The only issue in *Dorward* was as to the nature and extent of the pension rights whereas the issue here is whether the plaintiff has any right to a pension in the first instance.

Our Supreme Court has declared that one cannot ordinarily be estopped to assert the direct violation of a decisive statutory prohibition. *State v. Northwest Magnesite Co.*, 28 Wn.2d 1, 27, 182 P.2d 643 (1947). Similarly under the facts of the present case, the trust fund cannot be estopped into violating the criminal sanctions of the Labor Management Relations Act by requiring it to award a pension to an individual employer. *Moglia v. Geoghegan*, 267 F. Supp. 641, 647-48 (S.D.N.Y. 1967), 403 F.2d 110, 117 (2d Cir. 1968).

 This court must be concerned, of course, with the rights of the plaintiff in this unfortunate situation. It must at the same time, however, also be concerned with the rights of the approximately 450,000 employees which the testimony indicated are currently under this trust plan as well as with the employers whose contributions fund it. The policy of the law in this regard was expressed by the Second Circuit thusly:

> *The reason for the rigid structure of Section 302 is to insure that employer contributions are only for a proper purpose and to insure that the benefits from the established fund reach only the proper parties.*

(Italics ours.) *Moglia v. Geoghegan*, 403 F.2d 110, 116 (2d Cir. 1968).

ISSUE FOUR.

CONCLUSION. In the present case the plaintiff's evidence failed as a matter of law to establish that he justifiably relied on the alleged misrepresentations by Local 313's representatives.

The plaintiff testified that he had been assured by the

defendants, Clyde Wakeman and Orv Schlosser, as representatives of Local 313 and the trust fund, that an unincorporated owner-operator of a cab such as he was could receive pension benefits.

█ Even if we assume that the tort of negligent misrepresentation applies in nonsale of goods cases in Washington,[4] not only must reliance on the misrepresentation be established, but the reliance must also be shown to be justifiable under the circumstances. *J & J Food Centers, Inc. v. Selig*, 76 Wn.2d 304, 311, 456 P.2d 691 (1969); W. Prosser, *Law of Torts* 715 (4th ed. 1971). In this connection, the comparative availability of information to the parties is of importance. W. Prosser, *supra* at 718.

The plaintiff had been in the taxicab business in Tacoma for some 20 years when, as an employer, he signed the employer's agreement and the collective bargaining agreements requiring him to make contributions to the trust fund on behalf of his employees. He received copies of the pension agreement and the pension plan. He had as much opportunity to read them as did the union representatives.

The plaintiff also attended negotiating meetings between Local 313 representatives and the employees. As the trial court pointed out, even though he was a union member, as an employer he was dealing with the union representatives at arm's length.

The plaintiff was not an inexperienced person dealing with experienced persons. Nothing in the record indicates that he was of below average intelligence. He alleges no fraud, only negligence. The employer agreement he signed, as well as the pension plan, explicitly stated that the trust fund was funded by contributions made by employers for employees and that it was administered by the trustees of the trust fund.

*Knoll v. Phoenix Steel Corp.*, 465 F.2d 1128 (3d Cir. 1972)

---

[4] *Cf. J & J Food Centers, Inc. v. Selig*, 76 Wn.2d 304, 311, 456 P.2d 691 (1969); *Brown v. Underwriters at Lloyd's*, 53 Wn.2d 142, 150, 332 P.2d 228 (1958); W. Prosser, *Law of Torts* 704, 705 (4th ed. 1971); 34 Wash. L. Rev. 245, 249 (1959).

is in point. That case involved a suit brought by former employees to recover certain money claimed to be owing from a pension fund. The defendants in that case included the steelmakers union (USW) as well as the retirement board which administered the pension fund. The plaintiffs there claimed the right to recover lump sum pension payments based on statements made by union representatives to the effect that they would receive them.

The federal district court in *Knoll* granted a summary judgment in favor of the defendants. The Third Circuit affirmed holding:

> If, indeed, as appellants suggest, the Fund was an important part of their employment, it cannot reasonably be suggested that they would not have knowledge of the fact the Fund agreement had removed administration of the plan from USW control. *Board control, not USW control, was critical to the structure of the plan as a whole. Therefore, assuming that the Union in fact had promised the employees it would secure lump sum payments, reliance upon such a promise would be unreasonable.*

(Italics ours.) *Knoll v. Phoenix Steel Corp., supra* at 1132.

Under the circumstances of the present case, the plaintiff did not make out a sufficient case of justifiable reliance on the alleged misrepresentations to get past the defendants' challenge to the sufficiency of the evidence. The information in question having been as readily available to the plaintiff as it was to the union representatives, the plaintiff's reliance on the claimed misrepresentations, contrary to the information in the employer agreement and pension plan, was not justifiable. *Knoll v. Phoenix Steel Corp., supra.*

██ The trial court, therefore, correctly dismissed the defendants Wakeman and Schlosser as well as Local 313, Western Conference of Teamsters. Even accepting plaintiff's evidence as true and granting him every reasonable inference therefrom, as a matter of law the plaintiff did not establish a prima facie case against said defendants and

dismissal as a matter of law without the entry of findings was proper. *Enterprise Timber, Inc. v. Washington Title Ins. Co.,* 76 Wn.2d 479, 481, 457 P.2d 600 (1969). Having so held, we do not reach the issue of whether there was an agency relationship existing between any of said defendants and the trustees of the trust plan.

For the reasons previously stated, there was no genuine issue as to a material fact with respect to the trust plan. Accordingly, the trial court's entry of a summary judgment dismissing the defendant Western Conference of Teamsters Pension Trust Fund was likewise proper. CR 56.

Affirmed.

FARRIS and SWANSON, JJ., concur.