[No. 3054–2.   Division Two.   May 3, 1979.]

AGNES A. ROCKEY, *Appellant,* v. WESTERN CONFERENCE
OF TEAMSTERS PENSION TRUST,
*Respondent.*

*Robert A. Comfort* (of *Billett, Comfort & Rosenow*), for appellant.

*Perkins, Coie, Stone, Olson & Williams* and *Bruce D. Corker,* for respondent.

REED, J.—Agnes Rockey appeals from both a partial summary judgment and from a final judgment which dismissed her pension claim against defendant, Western Conference of Teamsters Pension Trust (Trust). We affirm in part, reverse in part and remand for further proceedings in the trial court.

The C. J. Rockey Company was incorporated in 1961 to engage in the installation of natural gas pipelines in Pierce County. Plaintiff's husband, C. J. Rockey, was president of the company and the owner of its capital stock, with the exception of two shares owned by plaintiff and one share owned by their son. In addition to serving as secretary-treasurer of the corporation, plaintiff was employed full time as an office worker—later office manager—for the company, for which she received a regular salary. On April 12, 1966, the company, although not a member of the Association of General Contractors (AGC), entered into a "compliance agreement" with Teamsters Union, Local 313, agreeing to be bound by an area–wide agreement (Heavy Highway Agreement) which had been negotiated for 1965–67 between the teamsters and the AGC. Upon execution of this agreement plaintiff reinstated her lapsed teamster membership and shifted it from Local 910 to Local 313.

The compliance agreement provided as follows:

(1) The Employer and the Union adopt and shall be bound by all of the provisions, except the grievance procedure of 1965–1966–1967 Building Heavy and Highway Construction Labor Agreement (referred to as the "principal agreement") and any supplements or modifications thereto which may be negotiated from time to time by the parties hereto at such times and in such manner as is set forth in the principal agreement.

(2) The Employer and the Union adopt and shall be bound by the terms and conditions of such trust or trusts as set forth in the then current principal agreement.

Article XI of the Heavy Highway Agreement reads as follows:

> During continuance of this Collective Bargaining Agreement the employer shall pay into the Western Conference of Teamsters Pension Trust Fund on account of *each member of the bargaining unit* until June 1, 1966, a sum of fifteen (15) cents and on and after June 1, 1966, a sum of twenty (20) cents for each hour for which compensation is paid to him, said amounts to be computed monthly.

(Italics ours.) Article XIII of the Agreement establishes the "Bargaining Unit" by job classification. Nowhere in Article XIII are office workers mentioned; nor does the agreement anywhere purport to cover wages, hours, fringe benefits or other conditions of employment for workers not included within the defined bargaining units.

Promptly after executing the compliance agreement, the Rockey Company began making pension contributions on plaintiff's behalf. On February 14, 1969, the company executed an "Addendum" to the Heavy Highway Agreement which provided *inter alia* as follows:

> This is an ADDENDUM to the 1968–1969–1970 Building, Heavy, & Highway Construction Labor Agreement.
> *This is a new unit* composed of Office Workers and Estimators and becomes effective January 1, 1969.

(Italics ours.)

On April 30, 1971, Mrs. Rockey had herself removed from the company payroll. She continued as office manager but reported her income as "dividends" instead of salary or wages; she also applied for and began receiving social security payments. The company continued to make contributions to the Trust on her behalf. In October 1973, plaintiff applied for retirement benefits. Based upon an audit, which we assume was triggered by her request, the Trust denied her claim, after concluding: (1) the 1966–68 employer contributions for plaintiff were not required by any written agreement and were therefore violative of the Taft–Hartley Act; (2) the 1971–73 contributions were unlawful because plaintiff was not an employee after April 30, 1971; and (3) the contributions for 1969–71 were made lawfully but had been forfeited because plaintiff incurred a "break in

service" under the terms of the Trust.[1] The Trust, however, did offer to refund plaintiff's "unlawful" contributions. Plaintiff refused this tender and brought this suit for retirement benefits. The Superior Court granted the Trust a partial summary judgment, holding that Mrs. Rockey ceased being an "employee" after April 30, 1971. After trial the court dismissed plaintiff's complaint for pension benefits but ordered the Trust to refund her unlawful contributions. Plaintiff appeals from both determinations.

THE 1966–68 CONTRIBUTIONS WERE UNLAWFUL

The trust fund in question is authorized by section 302(c)(5) of the Labor–Management Relations Act of 1947, as amended, 29 U.S.C. § 186 (Taft–Hartley Act). Section 302 represents a narrow exception to the act's general prohibitions against any payment by an employer to an employee representative.[2] Pension contributions are permitted only if made "to a trust fund established by such

---

[1]According to article II of the pension plan, a break in service occurs when an employee fails to work a minimum of 600 hours during any 2-year period ending on a December 31. The trial court concluded plaintiff suffered a break in service as of December 31, 1972, because she was no longer an employee after April 30, 1971.

We have not considered plaintiff's claim the rule is arbitrary and capricious because it is asserted for the first time on appeal. *Boeing v. State,* 89 Wn.2d 443, 572 P.2d 8 (1978). We note, however, that such rules have been recognized as legitimate and negotiable pension provisions, *see Thurber v. Western Conf. of Teamsters Pension Plan,* 542 F.2d 1106, 1109 (9th Cir. 1976); *see also Mosley v. National Maritime Union & Pension Plan,* 438 F. Supp. 413, 422 n.8 (E.D.N.Y. 1977), where the court stated: "A break in service rule is not, standing alone, arbitrary and capricious."

[2]29 U.S.C. § 186(a)(1), (2) and (b)(1), provide:
"Restrictions on financial transactions
"(a) . . .
"It shall be unlawful for any employer or association of employers or any person who acts as a labor relations expert, adviser, or consultant to an employer or who acts in the interest of an employer to pay, lend, or deliver, or agree to pay, lend, or deliver, any money or other thing of value—
"(1) to any representative of any of his employees who are employed in an industry affecting commerce; or
"(2) to any labor organization, or any officer or employee thereof, which represents, seeks to represent, or would admit to membership, any of the employees of such employer who are employed in an industry affecting commerce; or

representative, *for the sole and exclusive benefit of the employees of such employer, and their families and dependents.*" (Italics ours.) Section 302(c)(5)(B). The detailed basis on which such payments are to be made must be specified in a written agreement with the employer. Section 302(c)(5)(B). The overriding legislative purpose of the act is to prevent misuse and diversion of employee funds, *Moglia v. Geoghegan,* 267 F. Supp. 641 (S.D.N.Y. 1967), *aff'd,* 403 F.2d 110 (2d Cir. 1968), *cert. denied,* 394 U.S. 919, 22 L. Ed. 2d 453, 89 S. Ct. 1193 (1969); *see also Thurber v. Western Conf. of Teamsters Pension Plan,* 542 F.2d 1106 (9th Cir. 1976) and *United States v. Ryan,* 350 U.S. 299, 100 L. Ed. 335, 76 S. Ct. 400 (1956); *Trust Fund Servs. v. Heyman,* 88 Wn.2d 698, 565 P.2d 805 (1977); *Dohrer v. Wakeman,* 14 Wn. App. 157, 539 P.2d 91 (1975); *Bargreen v. Western Conf. of Teamsters Pension Trust,* 78 CCH Lab. Cas. ¶ 11,287 (W.D. Wash. 1976).

By their clear and unambiguous terms, neither the Compliance Agreement nor the Heavy Highway Agreement extends health and welfare pension benefits to office workers. As we have noted, signatory employers were required to contribute to the Trust only for those workers comprising the defined bargaining units. Office workers were not included in the bargaining units established in article XIII of the Agreement and never had been the subject of the negotiations which led to the Agreement. Nor did the Agreement address the issues of wages, hours, fringe benefits and conditions of employment for office workers. It was not until execution of the 1969 Addendum that a new bargaining unit of office workers and estimators was formed.

██ Plaintiff argues the parties did have a written agreement if the ordinary rules of contract law are applied. This argument is based upon a trial court finding that both

---

"...

"(b) ...

"(1) It shall be unlawful for any person to request, demand, receive, or accept, or agree to receive or accept, any payment, loan, or delivery of any money or other thing of value prohibited by subsection (a) of this section."

Maurice Cowling, union organizer for Local 313, and the Rockey Company intended that office workers be covered. The answer to plaintiff's contention is twofold: first, Cowling had no responsibility for drafting the Compliance Agreement, nor was he a party to it; second, the written contract requirement of section 302 as well as its policy considerations, precludes any consideration of the unexpressed subjective intentions of the parties to that agreement. *Trust Fund Servs. v. Heyman, supra.* Because both the Compliance Agreement and the Heavy Highway Agreement are clear and unambiguous in their terms, they are not subject to alteration by parol. *Jacoby v. Grays Harbor Chair & Mfg. Co.,* 77 Wn.2d 911, 468 P.2d 666 (1970).

■ Because there was no written contract requiring employer contributions on plaintiff's behalf until execution of the 1969 Addendum to the labor agreement, the Rockey Company contributions for 1966–68 were unlawful. By the same token it would be unlawful for the Trust to pay out benefits based on the unlawful contributions. *Thurber v. Western Conf. of Teamsters Pension Plan, supra.*

### Trust Not Estopped

■ Plaintiff next contends the Trust should be estopped from asserting section 302 as a defense because (1) Cowling represented to the Rockey Company that office workers would be covered upon execution of the compliance agreement, and (2) the Trust accepted contributions on plaintiff's behalf over a long period of time without protest. We disagree. This argument routinely has been denied by the courts, *Moglia v. Geoghegan, supra; Thurber v. Western Conf. of Teamsters Pension Plan, supra; Trust Fund Servs. v. Heyman, supra; Dohrer v. Wakeman, supra; Bargreen v. Western Conf. of Teamsters Pension Trust, supra.* As stated in *Thurber,* at 1109:

> The rights of other pensioners must be considered, and the trust fund may not be deflated because of the misrepresentation or misconduct of the Administrator of the fund. We agree with the district court that the doctrine of estoppel may not be invoked to compel an illegal act.

(Footnote omitted.) The Superior Court's holding these contributions were unlawful is affirmed.

## PROPRIETY OF SUMMARY JUDGMENT

Finally, plaintiff challenges the summary judgment determination that she was ineligible for retirement benefits under section 302 because she ceased to be an employee after April 30, 1971. The facts are undisputed that plaintiff (1) went off the company payroll on that date; (2) no longer received a "salary" as such; (3) referred to herself as "retired" on her tax returns; (4) reported her earnings as dividends rather than wages; and (5) applied for and began receiving social security benefits. Nevertheless, we hold this pivotal issue, on which plaintiff's pension rights turn, should not have been determined by summary judgment.

■■ The term "employee" is tautologically defined in 29 U.S.C. § 152(3),[3] and thus is of little assistance when applied to Mrs. Rockey's situation. However, in *Allied Chem. & Alkali Workers Local 1 v. Pittsburgh Plate Glass Co.*, 404 U.S. 157, 30 L. Ed. 2d 341, 92 S. Ct. 383 (1971), in addressing whether retired employees were proper subjects of a bargaining unit, the Supreme Court stated:

> In *NLRB v. Hearst Publications*, [322 U.S. 111, 88 L. Ed 1170, 64 S. Ct. 851 (1944)] . . . We said that "the broad language of the Act's definitions, which in terms reject conventional limitations on such conceptions as

---

[3] 29 U.S.C. § 152(3) states:

"When used in this subchapter—

" . . .

"(3) The term 'employee' shall include any employee, and shall not be limited to the employees of a particular employer, unless this subchapter explicitly states otherwise, and shall include any individual whose work has ceased as a consequence of, or in connection with, any current labor dispute or because of any unfair labor practice, and who has not obtained any other regular and substantially equivalent employment, but shall not include any individual employed as an agricultural laborer, or in the domestic service of any family or person at his home, or any individual employed by his parent or spouse, or any individual having the status of an independent contractor, or any individual employed as a supervisor, or any individual employed by an employer subject to the Railway Labor Act, . . . as amended from time to time, or by any other person who is not an employer as herein defined."

'employee,' . . . leaves no doubt that its applicability is to be determined broadly, in doubtful situations, by underlying economic facts rather than technically and exclusively by previously established legal classifications." The term "employee" must be understood with reference to the purpose of the Act and the facts involved in the economic relationship."

*Allied Chem. & Alkali Workers Local 1 v. Pittsburgh Plate Glass Co., supra* at 166–67. *See also NLRB v. E.C. Atkins & Co.,* 331 U.S. 398, 91 L. Ed. 1563, 67 S. Ct. 1265 (1947). In our view, both plaintiff's affidavit opposing the motion for summary judgment and her deposition testimony allege facts which, together with the reasonable inferences therefrom, raise a genuine issue as to her employment status after April 30, 1971. As we said in *Adamski v. Tacoma Gen. Hosp.,* 20 Wn. App. 98, 104, 579 P.2d 970 (1978):

In determining whether the movant has satisfied his burden of excluding any real doubt as to the existence of any genuine issue of material fact, the movant's papers must be closely scrutinized, while those of the nonmovant should be treated with indulgence. Finally, summary judgment will be denied if there appears to be any reasonable hypothesis under which the nonmoving party may be entitled to the relief sought.

When the legislative history of the National Labor Relations Act and the economic realities of plaintiff's relationship with her employer are considered, summary judgment was inappropriate. In enacting section 302, Congress was primarily concerned with protecting employee funds "from the collusion of union officials and management". *Mosley v. National Maritime Union Pension & Welfare Plan,* 438 F. Supp. 413, 421 (E.D.N.Y. 1977); *Moglia v. Geoghegan, supra; see also Arroyo v. United States,* 359 U.S. 419, 423–27, 3 L. Ed. 2d 915, 79 S. Ct. 864 (1959). The present case involves no such claim of fund mismanagement or abuse. Rather, the court is asked to disenfranchise one whose personal labors have produced contributions to the fund in accordance with the agreement between her employer and the union. Congress recognized that these contributions

represent money which otherwise would be paid to a worker in wages; to this extent they are the worker's contributions, *Mosley v. National Maritime Union Pension & Welfare Plan, supra; Bey v. Muldoon,* 223 F. Supp. 489, 495 (E.D. Pa. 1963), *aff'd per curiam,* 354 F.2d 1005 (3d Cir. 1966), *cert. denied,* 384 U.S. 987, 16 L. Ed. 2d 1004, 86 S. Ct. 1888 (1966).

■ Here it is the worker who complains that administrators of the fund have acted improperly to deprive her personally of the benefits to which she is entitled. In such a case we must be cautious lest the rule of strict construction we have employed in addressing the issues of the Taft–Hartley Act's requirement of a written agreement and the defense of estoppel, leads us to a harsh result neither contemplated by Congress nor dictated by the economic realities of Mrs. Rockey's case. Rather, in such circumstances, and in the absence of fraud or some other wrongdoing, we believe the courts must approach the question of employee pension eligibility with the philosophy expressed by Mr. Justice Blackmun, then a Judge of the Eighth Circuit, when he said in *Blassie v. Kroger Co.,* 345 F.2d 58, 68 (8th Cir. 1965):

> We would prefer to approach our present task [requested civil relief under section 302] with a construction policy favoring inclusion and benefits where there is no positive statutory language or inference of exclusion, rather than one favoring exclusion and a denial of benefits where there is no positive language of inclusion.

■ Defendant Trust strenuously urges that the undisputed facts of plaintiff's "retirement" placed plaintiff in the category of an owner–employer, thus precluding her from relief under the rationale of *Dohrer v. Wakeman, supra; Melang v. Electrical Workers Pac. Coast Pension Fund,* 79 CCH Lab. Cas. ¶ 11,811 (W.D. Wash. 1976); and *Chamberlin v. Bakery & Confec. Union & Indus. Fund,* 99 L.R.R.M. 3176, No. C76784-CBR (N.D. Cal. 1977). We disagree. In *Dohrer,* it was held that an individual doing business as a sole proprietor, could not be both employer and employee

for contribution and pension eligibility purposes under section 302. The same is true of *Melang*. In *Chamberlin* eligibility was denied, not because section 302 forbade it, but solely because both the collective bargaining agreement and trust agreement excluded corporate officers from participation.[4] The sole issue in *Chamberlin* was whether representations of pension eligibility by a local union agent and the acceptance of contributions gave rise to an estoppel to deny benefits. The *Chamberlin* court held they did not. In short, we find no decision—the Trust has cited us to none—for the proposition that, in the absence of fraud or wrongdoing, an officer–stockholder of a corporate employer may not also qualify for employee pension benefits under section 302.

In Mrs. Rockey's case, additional facts which support a finding she was an employee after April 30, 1971, are: (1) she continued to perform the same tasks as before; (2) she worked the same or substantially the same number of hours per week; (3) her "dividend" compensation equaled the weekly wages she had been receiving; (4) she performed her duties as secretary–treasurer in addition to those of office manager; (5) her stock ownership consisted of only two shares; and (6) the record is devoid of any evidence that she was paid from corporate profits and that other stockholders received a like "dividend." Surely, a most reasonable inference to be drawn from all this is that the so–called "dividends" were in reality compensation for her personal labors and did not represent a distribution of corporate profits. Finally, it appears that Mrs. Rockey's

---

[4]The trial court resolved the employee issue against Mrs. Rockey *solely* on the basis of section 302; the trust agreement does not exclude corporate officers per se. It is significant that a notice which accompanies the pension plan, advises employers, employees and local unions that "unincorporated owners and partners are not eligible to personally participate in a plan."

decision to retire and report her earnings as dividends and apply for social security was induced by advice from her accountant.

It is irrelevant that Mrs. Rockey owned stock in the company and held corporate office, absent proof of fraud or collusion to circumvent pension eligibility requirements. Indeed, the Trust concedes as much because it does not challenge the validity of the 1969–71 contributions. We fail to perceive on this record how Mrs. Rockey's receipt of pension benefits would in any way contravene the policies of the National Labor Relations Act, violate either the labor agreement or trust plan or damage the statutory beneficiaries. Rather, this appears to be a case where the administrators of the fund ought to have heeded their own regulations which provide:

> It is hereby declared as the policy of the Trustees that consideration will be given in any individual case or cases to extenuating circumstances not recited above, such as strikes, lockouts, reduced business activity, etc., for the purpose of liberalizing the conditions which must be met by individuals in order to have their employment and service remain unbroken or to be considered as in retirement from Service, or to be considered as disabled. Any such liberalization shall be on a basis uniformly applicable to all individuals similarly situated.

Western Conference of Teamsters Pension Plan, Regulation 10.

In conclusion, the trial court's determination that the 1966–68 contributions were unlawful is affirmed. Plaintiff is entitled to a refund of these contributions plus interest at the legal rate from date of judgment. The summary judgment and judgment dismissing plaintiff's complaint are reversed and the matter is remanded for trial on the issue of Mrs. Rockey's employment status after April 30, 1971; and if she is determined to have been an employee, the trial

court shall determine whether she had accumulated sufficient "covered" hours as an employee to qualify for pension benefits.

PEARSON, C.J., and PETRIE, J., concur.

Reconsideration denied May 31, 1979.

Review denied by Supreme Court September 7, 1979.