## Cage v. Teamsters' Pension Trust Fund of Philadelphia and Vicinity

*Robert M. Rowlands* and *Timothy B. Barnard*, for plaintiff.

*James J. Leyden*, for defendants.

BULLOCK, *J.*, March 5, 1981—This is an action in assumpsit by James D. Cage, plaintiff, against Teamsters' Pension Trust Fund of Philadelphia and Vicinity (The Fund), the administrator of the fund, and the individual members of the fund, praying that the court direct defendants to pay him a pension. Trial was held by this court without a jury on February 3, 1981. At that time, by agreement, the court permitted the complaint in assumpsit to be amended to a complaint in equity, since it prayed for affirmative relief, rather than damages.

The uncontroverted facts elicited were as follows: Plaintiff, now age 69, began driving his own truck for Scott Paper Co. in 1932. By 1950 he had acquired additional vehicles and was employing others to drive for him. In 1938 he became a member of the Teamsters' Union, Local 312, and

has remained a member ever since. Sometime before 1957 plaintiff incorporated his business under the name of James D. Cage, Inc. In 1957 defendant fund was created and plaintiff received a copy of a document entitled Teamsters' Pension Plan describing the pension plan, including its eligibility requirements. The plan restricted pensions to "employes." The plan called for the financing of the plan entirely by contributions from employers. Plaintiff, as president of his corporation, submitted to the fund a list of employes, including himself. Thereafter, he made contributions on his behalf as an employe to the fund. Plaintiff never received wages from the corporation, but received profits as owner. In July, 1968 plaintiff was injured and incapacitated from driving a truck. He applied to the fund for a pension. The fund sought his employment record from Social Security, which advised that the only wages of plaintiff reported to it were $3.33 in 1944 and $7,800 for the last quarter of 1968. The fund denied plaintiff's application on the ground that he was ineligible since he was not an employe. It offered the return of $2,927.20 paid to it on his behalf.

Plaintiff first contends that "Plaintiff was engaged in covered employment within the terms of the Pension Plan, and there was no exclusion for teamsters who serve in the capacity of an officer of a corporation or as an owner." The fallacy of this contention is obvious. Plaintiff was simply not an employe; he was not engaged in any kind of employment. Sections H and L of the pension plan provide as follows:

"SECTION H. EMPLOYEE:
The term Employee shall mean an individual who is in Covered Employment at the time of refer-

.

ence or an individual who has been so engaged and whose Continuous Service has not been broken at the time of reference.

\* \* \* \*

"SECTION L. COVERED EMPLOYMENT:

The term Covered Employment shall mean any Employment in a capacity for which Employer Contributions are payable to the Trust Fund in accordance with a Pension Agreement."

The word "employe" is not a technical term or a word of art. It is a common everyday word with a common every day meaning. The American Heritage Dictionary of the English Language (1973 ed.), we believe, gives a typical definition of "employe," namely:

"A person who works for another in return for financial or other compensation."

Plaintiff was not working for anyone else; he was not a wage earner. He was working for himself and paying others to work for him; he was an employer and a proprietor.

We see no reason why a document which refers by its terms to "employes" could be legally held to include also employers, simply because there was no provision specifically excluding employers. A reading of plaintiff's brief suggests to us that what plaintiff is really contending is that he is entitled to a pension because he was a union member and drove a truck just as did drivers employed by other companies. The obvious answer to this contention is that the pension plan, by its terms, is for *employes* who are union members, not employers who happen to be union members. If the plan were, by its terms, intended generally to benefit truck drivers or union members, then we could understand how not

being an employe would not disqualify a person in the absence of specific language so indicating. However, that is not the case here.

We do not believe that a man who operates a trucking business and employs other people could reasonably expect that he would be entitled to a pension which, by its terms, is restricted to employes. Plaintiff was born in 1911. He has lived through several decades of the development of the union movement in this country. If there is any one fact that characterizes this movement, it is the distinction between employers and employes, management and labor, proprietors and wage-earners. Unions developed to protect and benefit employes in their dealings with employers. Union activities are not for the benefit of employers. People who are employers and those who are employes are generally in different economic positions. We do not doubt that in the present case plaintiff's lifestyle may be more similar to that of other truck drivers than to that of other transport company presidents, and that he may personally identify more with truck drivers than with corporate presidents. The reality, however, is that in no way plaintiff an employe when he applied for a pension and he not only knew this, but had no reason to believe that he would receive a pension intended for employes. Perhaps plaintiff did not read the pension plan; however, it was there for him to read.

We note that in Blofsen v. Cutaiar, 460 Pa. 411, 333 A. 2d 841 (1975), a case factually very similar to the present case and involving the same pension plan, and the case most heavily relied upon by plaintiff, it was held by both the trial court and the Supreme Court that an employer was not eligible for a pension.

Plaintiff's second contention is that even if plaintiff is not entitled to a pension under the language of the pension plan, the fund is, nevertheless, estopped to deny him a pension. Plaintiff points to Blofsen v. Cutaiar, supra, as acknowledging such a possibility and contends that the evidence in the present case warrants a finding of estoppel.

Blofsen, like the present case, involves a suit for a pension by an employer whose pension payments were accepted by the same pension fund involved in this case. The trial court ruled that plaintiff did not meet the requirements of the fund, but that the fund was estopped from invoking the eligibility requirements because it accepted plaintiff's contributions. The Supreme Court reversed the award of a pension and concluded that the essential elements of estoppel had not been proven. The court in Blofsen concluded that there was no evidence of any reliance by plaintiff on any representations by the fund. It did not discuss the nature or adequacy of any representations, merely assuming, arguendo, their existence.

We do not believe that Blofsen requires us to hold in this case that there were adequate representations to support an estoppel. Certainly, Blofsen does not specifically say this. In the present case, the administrator of defendant fund testified that: (1) plaintiff originally submitted his name to the fund as an employe, (2) the fund deals with 1,800 employers and 30,000 employes and it would not be feasible to check each contribution to see if it comes from a person ultimately eligible for a pension. Moreover, it was agreed that at the inception of the fund, plaintiff received copies of the basic documents establishing the fund, including the eligibility requirements. Under these circum-

stances, we do not consider that the fund ever represented to plaintiff that he was eligible for a pension. Indeed, the documents issued by the fund represent to the contrary. However, even if, arguendo, some representative of the fund had made such a representation, we question whether this is the kind of representation which will support an estoppel. Ordinarily, estoppel must be based on representations of "facts." A representation as to eligibility is a representation only of the fact that the person making the representation believes eligibility exists. It is essentially a representation of a conclusion of law.

We do not believe that plaintiff could have reasonably concluded that it was represented to him by the fund that he was eligible for a pension. The issue had simply never arisen for discussion, much less the taking of an official position by defendant fund. Plaintiff made his payments under the mistaken, but presumably honest, belief that he would be eligible for a pension. The fund received the payments under the mistaken, but honest, belief that plaintiff was an employe. Actually, the origin of the mistake was plaintiff's, when he listed himself as an employe in a communication to the fund. In our view, the only representations made to plaintiff by the fund were the fund documents. The fact of acceptance of payments, under the circumstances, we do not believe had any significance as a representation.

Further, in the present case, as in Blofsen, we do not believe there was reliance. In Blofsen, the court stated, "There was no evidence which indicated Blofsen acted any differently than he would have acted had he known he was ineligible for pension benefits." We believe the same is true in the present

case. Plaintiff has simply continued to operate his business as usual from 1957, when the fund was created, to date. He testified that in 1979 he made from his business about $400 per week. It was agreed that if he had been awarded the pension he seeks, he would have received $300 per month for the first five years and then $110 per month thereafter. This is hardly the kind of money that would induce a person to rely upon it for future economic security. Moreover, there is no suggestion that had plaintiff not paid $2,927.20 into the fund, he would have used it otherwise in any way that would make any significant economic difference to him.

Defendant has cited, among other cases with varied factual situations, Thurber v. Western Conf. of Teamsters Pension Fund, 542 F. 2d 1106 (9th Cir. 1976), and Dohrer v. Wakeman, 14 Wash. App. 157, 539 P. 2d 91 (1975), both of which hold that an employer, who is also a driver, may not receive a pension from a pension fund intended by its terms for employes.

Defendant has further argued that the granting of a pension in this case would violate Federal law. In view of our conclusions hereinabove, we do not need to consider this issue.

Finally, in light of our conclusion that plaintiff is not entitled to a pension, we believe he is entitled to a refund of payments of $2,927.20 erroneously made, with interest. This award, we believe, is properly made against only the fund and not against named defendants.

## DECREE NISI

And now, March 5, 1981, the complaint in assumpsit, amended to a complaint in equity, herein

is dismissed. Plaintiff is awarded $2,927.20, with interest to be determined, against Teamsters Pension Trust Fund of Philadelphia and Vicinity. Plaintiff is directed to furnish the court forthwith a computation of interest. Defendant is directed, if it wishes to do so, to file a counter-computation within 15 days of the computation filed by plaintiff.

This order shall become a final order unless within 20 days hereof exceptions are filed hereto.