[No. 46799–4.   En Banc.   July 16, 1981.]

CULINARY WORKERS AND BARTENDERS UNION, LOCAL NO.
596, HEALTH AND WELFARE TRUST, ET AL,
*Respondents,* v. GATEWAY CAFE,
INC., ET AL, *Appellants.*

*James R. Dickens* (of *Karr, Tuttle, Koch, Campbell, Mawer & Morrow, P.S.*), for appellants.

*Jack R. Burns* (of *Hubbard & Burns, Inc., P.S.*) and *Lawrence Schwerin* (of *Hafer, Cassidy & Price*), for respondents.

DORE, J.—These parties and their dispute were before this court in *Culinary Workers, Local 596 v. Gateway Cafe, Inc.*, 91 Wn.2d 353, 588 P.2d 1334 (1979) (*Gateway* I). A review of the entire controversy is necessary to place our current holding in the proper light.

### ISSUE

Whether a trust fund can collect *contributions* on behalf of employees from an employer whose employees are *not* union members, and which employees had never selected their *union representative.*

### FACTS

Pursuant to a 1972 collective bargaining agreement, Gateway Cafe, Inc. (Gateway) agreed to make contributions to the Restaurant Employees, Bartenders and Hotel Service Employees Welfare and Pension Trust, formerly Culinary Workers and Bartenders Union Local No. 596 Health and Welfare Trust Fund (trust fund). No contributions were made. The trust fund obtained a default judgment against Gateway for approximately $6,000. Settlement negotiations followed efforts to collect on that judgment. A settlement offer was communicated from Gateway to the trust fund by

letter. Its primary terms, relevant here, were that Gateway agreed (1) to sign a detailed interim agreement providing for substantial employee benefits, (2) to pay medical claims incurred by its employees from March 1973, (3) that the existing judgment be satisfied in full by the settlement, and (4) that Gateway pay the trust fund $2,000.

Gateway paid the $2,000 and executed the interim agreement on February 13, 1975 (February agreement). It provided that Gateway recognize the Culinary Workers and Bartenders Union Local No. 596 (union) as the exclusive bargaining agent for all Gateway employees. It further required that all employees of Gateway either join the union or face discharge. By addendum to that agreement, Gateway irrevocably assigned its negotiation rights as employer to the Restaurant Association of the State of Washington (association). Thereafter Gateway failed to perform, notably by failing to make employer contributions to the trust fund.

It is undisputed that at no time did the Gateway employees ever express a desire to be represented by the union, no election was ever held to determine whether the union would be the representative of the employees, no request to bargain was received, and no authorization cards were signed.

The trust fund filed suit to collect unpaid employer contributions. The union filed a declaratory judgment action to determine the validity of the February agreement as well as the validity of a collective bargaining agreement signed August 22, 1975 (August agreement). This August agreement had been entered into by the union and the association, as negotiator for Gateway. These suits were consolidated for trial.

*Gateway* I held that the trial court did not err in its determination that the agreements were enforceable against Gateway. However, we did invalidate the sections of the agreements which (1) declared the union as the exclusive bargaining agent of the employees and (2) required that employees join the union. A severability clause protected the remainder of the provisions from invalidity. The cause

was remanded for further proceedings and an award of attorney's fees.

On remand the trial court granted the trust fund's motion for summary judgment for contributions due on behalf of all of Gateway's employees for the period May 1974 through May 1978. The court also awarded liquidated damages (10 percent of the amount of delinquent contributions), attorney's fees and auditing fees. The total judgment was $57,211.41 plus interest.

## DECISION

We reverse the trial court and hold that the contributions to the trust fund are not due (1) under the unambiguous language of the agreements themselves and (2) because such contributions would violate federal law. The agreements remain in force in all other respects.

We first dispose of the union's and trust fund's argument that *Gateway* I's holding of enforceability of the agreements acts as res judicata to bar the instant appeal. The *validity* of the February agreement was disposed of in *Gateway* I, and cannot be relitigated here. Res judicata requires an identity of subject matter, cause of action, persons and parties, and quality of persons for or against whom the claim is made. *Seattle–First Nat'l Bank v. Kawachi,* 91 Wn.2d 223, 588 P.2d 725 (1978). Only the declaratory judgment portion of the consolidated trial (*i.e.,* the enforceability of the agreements) was before the *Gateway* I court. The question of amount of contributions due, if any, had not been litigated. Upon remand, the contributions portion of the case was to be determined. Given our excising of certain portions of the agreements, the question then became whether any contributions were due under the terms of the agreements *as they stood after our decision in Gateway I.* This issue never having been litigated, there is *no* res judicata difficulty at this juncture.

It was clearly the intent of the pertinent documents to limit coverage to union employees. We recognize that at the time of the execution of the documents there was a presupposition that all employees would become union members. Nonetheless, the record discloses the following:

RECITALS:

1. The Working Agreement requires the employers to contribute to a fund to acquire health and welfare benefits for certain individuals who are under the jurisdiction of the unions.

And further,

ARTICLE I—DEFINITIONS

5. Employees shall mean all individuals in the industry who are under the jurisdiction of the union.

██ Even absent the language and intent found in the documents themselves, we hold that no employer contributions are due because such contributions would violate federal law. At the time of the *Gateway* I trial in March 1977, it was stipulated that the trust fund was organized under section 302(c) of the 1947 amendments to the National Labor Relations Act (Taft–Hartley Act) (1947), codified in the Labor Management Relations Act (LMRA) 29 U.S.C. § 186 (1970). Consequently, federal law governs administration of this trust fund even though the initial validity of the collective bargaining agreement was determined by state law. *Trust Fund Servs. v. Heyman,* 88 Wn.2d 698, 565 P.2d 805 (1977).

██ Section 186 of the LMRA is a criminal statute which restricts payments by an employer to unions, trust funds and other such employee representatives. The statute is strictly construed in order to prevent misuse and abuse of employee funds. *Dohrer v. Wakeman,* 14 Wn. App. 157, 539 P.2d 91 (1975); *Rockey v. Western Conference of Teamsters Pension Trust,* 23 Wn. App. 248, 595 P.2d 557 (1979).

Section 186 of the LMRA, however, provides certain limited exceptions to the criminal prohibitions against payments by an employer to an employee representative. The pertinent exception permits money contributions

> paid to a trust fund established by such [employee] *representative,* for the sole and exclusive benefit of the employees of such employer . . .

(Italics ours.) 29 U.S.C. § 186(c)(5).

██ Trust fund contributions may not be made under

section 186 for employees *not* represented by the union in the appropriate unit. *Rockey v. Western Conference of Teamsters Pension Trust, supra.* Such contributions are illegal, and if contributions are made and accepted for persons not represented by the union, such persons cannot later collect trust benefits. *Dohrer v. Wakeman, supra; Moglia v. Geoghegan,* 403 F.2d 110 (2d Cir. 1968).

For contributions to be lawful, they must be made pursuant to a collective bargaining agreement with a union which is a "representative" of the employees. Under the Labor Management Relations Act, "representative" means "Representatives designated or selected for the purposes of collective bargaining *by the majority of the employees* . . ." LMRA, 29 U.S.C. § 159(a). (Italics ours.) In the present case, as this court confirmed in *Gateway* I at page 370, the union clearly is *not* the "representative" of the Gateway employees.

In *Shapiro v. Rosenbaum,* 171 F. Supp. 875, 885 (S.D.N.Y. 1959):

> In fact, no case construing Section 302 has gone beyond a holding that "representative of employees" means an individual or labor organization *authorized by the employees* to act for them in dealings with their employers.

(Italics ours.)

These cases uniformly hold that "representative" means the representative *designated by the employees.*

Without majority employee support, the union is not the representative of the employees regardless of any agreements between the union and the employer. In *NLRB v. Canton Sign Co.,* 457 F.2d 832 (6th Cir. 1972), a collective bargaining agreement similar to the one in the subject case was signed between the employer and the union despite the fact there was no representation election, no card count, nor any other mechanism to determine whether the union was the chosen representative of the employees, wherein the court held:

> The making of such a contract [i.e., the collective bar-

gaining agreement] by a union and an employer without a majority of the involved employees having chosen the union as its bargaining agent would be illegal, *and confers no right on the union.*

(Italics ours.) *NLRB v. Canton Sign Co., supra* at 835.

An employer and a union cannot confer "representative" authority upon that union. Such power resides exclusively with the employees. *Dickey v. NLRB*, 217 F.2d 652 (6th Cir. 1954). Without such representative capacity, the employer cannot make contributions to a trust fund under section 186(c)(5).

In *Suro v. Arroyo Lighterage & Shipping Co.*, 1 N.B.P.C. 832 (D.C.P.R. 1957),[1] an employer association and a labor union entered into a collective bargaining agreement and a trust agreement under which a health and welfare trust fund was established. The agreements provided for the making of contributions to the trust by employers who were not members of the employer association. Thereafter, the union was replaced as the bargaining representative for employees who were employed by members of the employer association, but it continued to represent the employees of independent employers. The court upheld the legality of the trust agreement between the union and the employer, but granted a restraining order prohibiting contributions authorized by such trust agreement because the employees designated a *different* union to be their representative. In the subject case, even a stronger argument can be made than in *Suro* because the Gateway employees have *never* designated any union to be their representative.

Respondent union cites the recent case of *Contractors Health & Welfare Plan v. Associated Wrecking Co.*, 106 L.R.R.M. 2257 (8th Cir. 1981). This case and others construing section 8(f) of the Labor Management Relations Act are not in point. Section 8(f) permits an employer engaged in the building and construction industry to enter into a

---

[1]The citation refers to the reporter entitled "Negotiated Employee Benefit Plans Cases". Preliminary facts are also set forth in *Copra v. Suro*, 236 F.2d 107 (1st Cir. 1956).

prehire agreement with a labor organization before the majority status of that organization has been established in accordance with the other provisions of the Act. This special exemption permitting the union to "represent" the employees before an employee election is made was adopted to meet the peculiar needs of the construction industry. *NLRB v. Irvin,* 475 F.2d 1265 (3d Cir. 1973). Prehire agreements are not permitted in the restaurant industry.

## CONCLUSION

1. That where a union is not the representative of the majority of the employees in the appropriate bargaining unit (as determined by union membership, election or otherwise), no contributions are due. However, where a union is the bargaining representative of the majority of the employees, and some employees are nonunion, contributions would be due from employers for both union and nonunion employees.

2. That any claimed employer contributions of Gateway Cafe due for the period between May 1974 and February 13, 1975, shall be precluded, as such claims for contributions were previously settled by the parties.

3. That the contribution provisions in the February and August agreements cannot be enforced. The judgment against Gateway for employer contributions be set aside.

4. That attorney and auditor fees previously granted in *Gateway* I at the trial and appellate levels are hereby affirmed in all respects. That the amounts of any unpaid respondent attorney fees for *Gateway* I shall be set by the trial court.

5. That attorney and auditor fees ordered by the trial court in *Gateway* II shall be set aside.

BRACHTENBACH, C.J., and ROSELLINI, STAFFORD, UTTER, DOLLIVER, HICKS, WILLIAMS, and DIMMICK, JJ., concur.

Reconsideration denied March 26, 1982.