753 F.2d 561
 INDIANA STATE COUNCIL OF ROOFERS HEALTH AND WELFARE FUND,
Plaintiff-Appellant,
v.
ADAMS ROOFING COMPANY OF KOKOMO, INC., McGuff Supply, Inc.,
Adams Roofing Co., Inc., and Trinidad Asphalt
Roofing Co., Inc., Defendants-Appellees.
 Nos. 83-1562 to 83-1565.
 United States Court of Appeals,
Seventh Circuit.
 Argued Nov. 15, 1984.
Decided Jan. 23, 1985.
 
 Joseph V. Simeri, Sweeney, Butler & Simeri, South Bend, Ind., for plaintiff-appellant.
 Steven V. Shoup, Williams & Shoup, S. Douglas Trolson, Lowe, Gray, Steele & Hoffman, Indianapolis, Ind., for defendants-appellees.
 Before FLAUM, Circuit Judge, PELL, Senior Circuit Judge, and EVANS, District Judge.*
 PELL, Senior Circuit Judge.
 
 
 1
 Plaintiff-appellant, the Indiana State Council of Roofers Health and Welfare Fund, sued four roofing companies, Adams Roofing Company of Kokomo, Inc., McGuff Supply Co., Inc., Adams Roofing Co., Inc., and Trinidad Asphalt Roofing Co., Inc., alleging that these companies violated section 515 of the Employee Retirement Income Security Act (ERISA) by failing to make payments to the fund on behalf of certain employees. 29 U.S.C. Sec. 1145 (Supp.IV 1980). The Indiana State Council of Roofers Health and Welfare Trust Agreement, to which all defendants were bound, required each company to pay into the fund on behalf of "any employee whose wage rates are established by the Collective Bargaining Agreement[s]" entered into between the company and the union. The dispute in this case arose because each defendant employed a class of employees to do bargaining unit work, denominated "helpers," whose wage rates the collective bargaining agreements did not establish. Plaintiff claims that because helpers did bargaining unit work defendants were obligated to make payments to the fund on their behalf. The district court held that defendants were not liable under ERISA for delinquent contributions on behalf of these employees because their wage rates were not set forth in the collective bargaining agreements.
 
 I. THE FACTS
 
 2
 Between April 14, 1975, and December 11, 1980, each defendant roofing company signed successive collective bargaining agreements with Local Union No. 205 of the United Slate, Tile and Composition Roofers, Damp and Waterproof Workers Association that bound each defendant to the terms of the Indiana State Council of Roofers Health and Welfare Trust Agreement. Section 3.02 of the trust provides:
 
 
 3
 Each employer subject to a collective bargaining agreement shall contribute and pay into the Trust Fund an amount specified in the then current Collective Bargaining Agreement ... for all hours actually worked ... by any employee whose wage rates are established by the Collective Bargaining Agreement.
 
 
 4
 From April 1975 until December 1980, the relevant collective bargaining agreements established wage rates for "journeymen" and "apprentices," the two classes of employees constituting "workmen" under the agreements. At all pertinent times during this period, each company employed individuals classified as "helpers" to do bargaining unit work. Defendants did not contribute consistently to the fund on behalf of these helpers, although they did make occasional contributions on behalf of certain individual helpers.
 
 
 5
 According to the 1975 agreement between defendant McGuff Supply Company and the union, the provisions of which all other relevant collective bargaining agreements track, the parties bound by the agreement included the employer, the union, and the workmen. Under article II, the workmen bound by the agreement included "journeymen roofers, damp and waterproof workers, and apprentices." The "scope-of-work" clause, article III, essentially restricted the coverage of the agreement to all facets of roofing work performed by the employer. Article VII of the agreement specified the wages to be paid to journeymen roofers, damp and waterproof workers, and apprentices.
 
 
 6
 On December 11, 1980, all defendants signed a Memorandum of Understanding with the union. As the district court founds, the parties executed this Memorandum of Understanding "to bring persons employed by the companies as 'Helpers' within the coverage of the Collective Bargaining Agreement then in effect between the union and the companies and to establish a wage rate for the 'helpers.' " Incorporating the substance of the Memorandum of Understanding, the next collective bargaining agreement between the defendants and the union defined "employee" to include "helper" and established wage rates for helpers. Each defendant company has contributed to the fund on behalf of helpers from the effective date of the Memorandum of Understanding until the present time.
 
 
 7
 On March 17, 1980, plaintiff sued defendants, pursuant to sections 502(a)(3) and 515 of ERISA, to collect delinquent contributions to the fund. 29 U.S.C. Sec. 1132(a)(3) (1976); 29 U.S.C. Sec. 1145 (Supp.IV 1980). Section 515 obligates an employer to contribute to a trust fund "in accordance with the terms and conditions of such plan." 29 U.S.C. Sec. 1145 (Supp.IV 1980). Section 502(a)(3) authorizes civil actions by fund trustees to obtain equitable relief for breaches of trust agreements. 29 U.S.C. Sec. 1132(a)(3) (1976). In this case, although the fund sued for contributions on behalf of various journeymen and apprentices, defendants paid these amounts prior to trial.
 
 
 8
 The issue on appeal is whether, as plaintiff argued below, defendants are liable for contributions on behalf of helpers from 1975 until the effective date of the Memorandum of Understanding. Plaintiff argues that defendants should have made payments on behalf of helpers during this period because they performed bargaining unit work and, therefore, were either journeymen or apprentices. Because helpers were actually journeymen or apprentices, plaintiff argues, their wage rates were established in the collective bargaining agreements. Judge Sharp of the district court rejected plaintiff's argument and held that defendants had not violated ERISA by failing to contribute to the fund on behalf of helpers.
 
 II. ERISA CLAIMS
 
 9
 In its complaint, plaintiff claims that the failure of defendants to make payments to the fund on behalf of helpers before 1980 violated section 515 of ERISA. Initially, we note, whether or not this occurred, that plaintiff did not claim that the employment of helpers by defendants to perform bargaining unit work violated the collective bargaining agreements or constituted an unfair labor practice.[1] Section 515 of ERISA provides:
 
 
 10
 Every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement.
 
 
 11
 29 U.S.C. Sec. 1145 (Supp.IV 1980). In Kaiser Steel Corp. v. Mullins, 455 U.S. 72, 87, 102 S.Ct. 851, 861, 70 L.Ed.2d 833 (1982), the Supreme Court noted that the Senate Committee on Labor and Human Resources enacted section 515 "because 'simple collection actions brought by plan trustees [had] been converted into lengthy, costly and complex litigation concerning claims and defenses unrelated to the employer's promise and the plan's entitlement to the contributions,' and steps [had to] be taken to 'simplify delinquency collection.' " (quoting Senate Committee on Labor and Human Resources, S. 1076--The Multiemployer Pension Plan Amendments Act of 1980: Summary and Analysis of Consideration, 96th Cong., 2d Sess., 44 (Comm. Print, Apr. 1980) (1980 Senate Labor Committee Print)). See Bugher v. Feightner, 722 F.2d 1356, 1359-60 (7th Cir.1983), cert. denied, --- U.S. ----, 105 S.Ct. 98, 83 L.Ed.2d 43 (1984). In Bugher, this court addressed the relationship between section 502(a)(3), the section upon which plaintiff predicates its claim for relief, and section 301 of the Labor Management Relations Act authorizing suits for breaches of collective bargaining agreements. This court acknowledged that section 502(a)(3), permitting fund trustees to sue for equitable relief, did not supplant section 301 of the Labor Management Relations Act. As we stated, "a review of the statutory scheme and legislative history of ERISA demonstrates that 29 U.S.C. Sec. 1132(a)(3) was intended to supplement rather than supersede the rights existing under 29 U.S.C. Sec. 185(a) [section 301]." Id. at 1359. Thus, the clear language of section 515 and the decisions of the Supreme Court and this court delineating the relationship between ERISA and the Labor Management Relations Act require us to look to the terms of the trust agreement to determine if defendants are liable for delinquent contributions to the fund.
 
 
 12
 The collective bargaining agreements bound defendants to the terms of the trust agreement. Article XI, section 2 of the 1979 collective bargaining agreement, for example, provided: "Employer agrees to abide by the Trust Agreement of the Indiana State Council of Roofers Health and Welfare Trust." As previously set out, section 3.02 of the trust agreement requires each defendant employer to pay into the fund a specified amount based on the number of hours worked by employees whose wage rates are set forth in the collective bargaining agreements. The collective bargaining agreements in effect prior to December 1980, when the Memorandum of Understanding incorporated helpers into the collective bargaining agreement, nowhere established wage rates for helpers. Naturally, the agreements only established wages for those employees covered by the definitional clauses of the agreements. Under articles II and III of the pre-1980 agreements, the only employees covered by the agreement were "workmen," defined as those employees performing bargaining unit work classified as "journeymen" or "apprentices."
 
 
 13
 The provisions of the trust agreement provide the framework with which a court should analyze an employer's obligation to contribute to a health and welfare fund. See Hinson v. NLRB, 428 F.2d 133, 139 (8th Cir.1970). In this case, the trust agreement unambiguously obligates defendants to contribute to the fund only on behalf of employees whose wages are set forth in the collective bargaining agreement. Therefore, because helpers' wages were not established in the collective bargaining agreements prior to 1980, defendants literally did not violate section 515 of defendants ERISA. 29 U.S.C. Sec. 1145 (Supp.IV 1980).
 
 
 14
 Plaintiff, nevertheless, argues that the collective bargaining agreements should be construed to mean that all employees who perform bargaining unit work are, in fact, either journeymen or apprentices, regardless of the classification given to them by defendants. Thus, plaintiff contends, defendants are liable for delinquent contributions on behalf of helpers because helpers were actually journeymen or apprentices whose wage rates the agreements established. That helpers perform bargaining unit work, however, does not necessarily mean that they are journeymen or apprentices entitled to all the commensurate benefits under the collective bargaining agreement. Thomas Adams, the president of Adams Roofing Company, Inc., and Adams Roofing Company of Kokomo, Inc., testified that he employed helpers to do unskilled work that he thought failed to merit union pay. Further, in the Memorandum of Understanding, defendants and the union agreed that helpers should be reclassified, and accordingly compensated, as "pre-apprentice[s], apprentice[s] or journeymen in accordance with [their] skill level, roofing knowledge and admission into the Apprenticeship program." This evidence suggests that helpers did not necessarily possess all of the skills that apprentices did. In short, although helpers did perform some of the components of bargaining unit work set forth in the agreements, they were not necessarily journeymen or apprentices, on whose behalf the trust agreement requires payments to the fund. In fact, as the district court pointed out, an employer can be criminally liable for making payments to a trust fund in violation of the provisions of the controlling written agreement. 29 U.S.C. Sec. 186(c)(5) (1976). See NLRB v. Amax Coal Co., 453 U.S. 322, 336, 101 S.Ct. 2789, 2729, 69 L.Ed.2d 672 (1981); Culinary Workers and Bartenders Union No. 596 Health and Welfare Trust v. Gateway Cafe, Inc., 95 Wash.2d 791, 793-95, 630 P.2d 1348, 1350-51 (1981) (en banc), modified, 642 P.2d 403 (1982), cert. denied, 459 U.S. 839, 103 S.Ct. 87, 74 L.Ed.2d 81. Therefore, for the reasons that we stated previously, this court holds that defendants did not violate section 515 of ERISA, 29 U.S.C. Sec. 1145 (Supp.IV 1980), by failing to contribute to the fund on behalf of helpers.
 
 III. ATTORNEY'S FEES
 
 15
 Plaintiff argues on appeal that it is entitled to attorney's fees under ERISA. 29 U.S.C. Sec. 1132(g)(2) (Supp.IV 1980). On June 1, 1983, the district court reserved ruling on the issue of attorney's fees pending the disposition of this appeal. In oral argument, plaintiff conceded that "defendants are correct that the issue is not really properly before this court because Judge Sharp reserved his "ruling" on the issue of attorney's fees. Thus, despite plaintiff's appeal to this court for "some direction on that point whether in a footnote or in dicta," this court declines to render an advisory opinion on the issue of attorney's fees.
 
 IV. CONCLUSION
 
 16
 For the foregoing reasons, this court holds that defendants did not violate section 515 of ERISA, 29 U.S.C. Sec. 1145 (Supp.IV 1980), by failing to make contributions to the fund on behalf of helpers between 1975 and 1980. Accordingly, the judgment of the district court is AFFIRMED.
 
 
 
 *
 Terence T. Evans, District Judge for the Eastern District of Wisconsin, is sitting by designation
 
 
 [1]
 Although the case law and the language of section 515 of ERISA compel this court to hold that defendants are not liable for delinquent contributions, we do not condone defendants' unilateral actions in hiring helpers to do bargaining unit work at less than the wages set forth in the collective bargaining agreements. Such action, indeed, may constitute a breach of the relevant collective bargaining agreements and, thereby, constitute a violation of section 301 of the Labor Management Relations Act. 29 U.S.C. Sec. 185(a) (1976). Also, by failing to bargain with the union regarding the employment of helpers, defendants may have committed an unfair labor practice. 29 U.S.C. Secs. 158(a)(5), 158(d), 159(a) (1976). These issues are not presented to us, perhaps with some understandable reluctance by the union responsible for the fund whose failure to take action apparently permitted that which happened